[No. F009836. Fifth Dist. June 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT NAVARETTE GONZALEZ, Defendant and Appellant.

COUNSEL

Jeanne Keevan-Lynch, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Anthony L. Dicce and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—

STATEMENT OF THE CASE

Appellant was charged by information with violations of Health and Safety Code section 11350, possession of heroin and cocaine (counts I and II); Health and Safety Code section 11351, possession of heroin and cocaine for the purpose of sale (counts III and IV); and Penal Code section 12025, possession of a concealed weapon (count V). It was further alleged as a sentence enhancement that appellant was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a) at the time of committing the four drug-related offenses (counts I through IV).

Appellant was arraigned, pleaded not guilty to all counts, and denied the enhancement.

On November 30, 1987, trial commenced with selection of the jury. Appellant's motion pursuant to *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] was denied. The concealed weapon charge (count V) was dismissed.

On December 4, 1987, appellant was found guilty of counts I and II, and the enhancement was found true as to those counts. Appellant was acquitted on the remaining counts.

Appellant was sentenced to state prison for the midterm of two years on count I, with one year added for the enhancement. The same term was imposed for count II, to run concurrently with the sentence on count I, with the enhancement stricken for count II.

Appellant filed a timely appeal raising various issues for review. We will conclude that *Wheeler* error mandates a reversal of the judgment and confine our opinion to that issue.

## DISCUSSION

Appellant contends the prosecutor improperly used peremptory challenges to systematically exclude Hispanics from the jury in violation of *People* v. *Wheeler, supra,* 22 Cal.3d 258. Respondent denies that contention.

■ In *People* v. *Wheeler, supra,* 22 Cal.3d 258, the California Supreme Court held that a prosecutor may not use peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias. Group bias was defined as a presumption that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds. (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1215 [255 Cal.Rptr. 569, 767 P.2d 1047]; *People* v. *Wheeler, supra,* 22 Cal.3d at p. 276.) Such a use of peremptory challenges violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution. (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 276-277.)

In *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712], the United States Supreme Court similarly held that the equal protection clause forbids peremptory challenges of potential jurors on account of their race when the defendant is a member of that race. Such challenges may not be used to "strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black." (*Id.* at p. 97 [90 L.Ed.2d at p. 88].)[1]

■ Peremptory challenges are presumed to be constitutionally valid. (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 278, 282.) The *Wheeler* motion involves the shifting of this presumption. (*Id.* at p. 280.) ■ If a party believes his opponent is improperly using peremptory challenges for a discriminatory purpose, he must raise a timely challenge and make a prima facie case of such discrimination to the satisfaction of the court. (*Ibid.*) First, he must establish as "complete a record" of the circumstances as feasible; second, he must show that the persons excluded are members of a cognizable group; and third, from "all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias."

[1] Under *Batson,* the defendant can only challenge the exclusion of a group of which he is a member. Under *Wheeler,* however, defendant need not be a member of the group to challenge its exclusion. (*People* v. *Johnson, supra,* 47 Cal.3d at p. 1217, fn. 3.)

(*Ibid.*; *People* v. *Snow* (1987) 44 Cal.3d 216, 222 [242 Cal.Rptr. 477, 746 P.2d 452].) The court must then determine whether a reasonable inference arises that the challenges were used on the basis of group bias alone. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 281.) ■ Hispanics are a cognizable group for purposes of measuring the fair cross-section requirement. (*People* v. *Trevino* (1985) 39 Cal.3d 667, 683 [217 Cal.Rptr. 652, 704 P.2d 719], disapproved on other grounds in *People* v. *Johnson, supra,* 47 Cal.3d 1194, 1219; *People* v. *Harris* (1984) 36 Cal.3d 36 [201 Cal.Rptr. 782, 679 P.2d 433].)

■ Once a prima facie case has been shown, the burden shifts to the prosecutor to show that the jurors in question were legitimately excused. (*People* v. *Snow, supra,* 44 Cal.3d at p. 222; *People* v. *Barber* (1988) 200 Cal.App.3d 378, 388 [245 Cal.Rptr. 895].) "The showing need not rise to the level of a challenge for cause." (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 281-282; *Batson* v. *Kentucky, supra,* 476 U.S. at p. 97 [90 L.Ed.2d at p. 88].) "[T]o sustain his burden of justification, the allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses—i.e., for reasons of specific bias . . . ." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.)

The *Wheeler* prima facie finding, then, may be overcome by establishing that the peremptories were exercised on the basis of a specific bias. (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 274, 276.) *Wheeler* discussed various examples of specific bias. "For example, a prosecutor may fear bias on the part of one juror because he has a record of prior arrests or has complained of police harassment, and on the part of another simply because his clothes or hair length suggest an unconventional lifestyle. . . . Indeed, even less tangible evidence of potential bias may bring forth a peremptory challenge: either party may feel a mistrust of a juror's objectivity on no more than the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another' [citation]—upon entering the box the juror may have smiled at the defendant, for instance, or glared at him." (*Id.* at p. 275.) *Batson* does not use the term "specific bias," but permits challenges if they are justified by "a neutral explanation related to the particular case to be tried." (*Batson* v. *Kentucky, supra,* 476 U.S. at p. 98 [90 L.Ed.2d at p. 88].)

■ To the extent that a trial court's ruling on the proffered explanation of a prosecutor turns on the latter's credibility, a reviewing court should ordinarily give those findings great deference. (*People* v. *Turner* (1986) 42 Cal.3d 711, 720, fn. 6 [230 Cal.Rptr. 656, 726 P.2d 102].) However, "in some cases the reviewing court may conclude that the explanation is

inherently implausible in light of the whole record. And even when there is no doubt of the prosecutor's good faith, the issue whether a given explanation constitutes a constitutionally permissible—i.e., nondiscriminatory—justification for the particular peremptory challenge remains a question of law." (*Ibid.*)

■ If a single peremptory challenge of a prospective juror in the subject cognizable group is not justified, the presumption of systematic exclusion is not rebutted. At that point, the Supreme Court intended that the jury panel be discharged. "[T]he court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. . . . Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.)

■ On appeal, *Wheeler* error has been deemed reversible per se in light of the fundamental right involved. (*People* v. *Snow, supra,* 44 Cal.3d at p. 226.) " '[N]o inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside.' [Citation.]" (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 283; *People* v. *Granillo* (1987) 197 Cal.App.3d 110, 116 [242 Cal.Rptr. 639].)

*Appellant's Wheeler motion*

Appellant's *Wheeler* motion followed the prosecutor's peremptory challenges of two Hispanic prospective jurors, Hector D. and Manuel S. Manuel S., part of the original jury panel, was a retired restaurant manager whose wife was a restaurant cook. The prosecutor asked him the following questions:

"Q. Okay. Are you a first generation or second generation or—born in America?

"A. (Indicating)

"Q. First generation?

"A. I was born in Mexico.

"Q. Okay. And you understand that I have to prove my case beyond a reasonable doubt—

"A. Yes, I do.

"Q. —and you have no problem with that?

"A. No." Manuel S. was not asked any additional questions.

Hector D. was not part of the original panel but was called after the prosecutor exercised her first peremptory challenge. He indicated he was a mill operator for Hatch Milling and his wife was a bank teller in Turlock. He had never sat on a jury before and did not have any family or friends connected with law enforcement. He indicated he could sit as a fair and impartial juror. He understood the concept of proof beyond a reasonable doubt and that the prosecutor was required to prove the guilt of each defendant separately. The prosecutor asked the following questions:

"Q. Mr. D[ ], do you think you have good common sense?

"PROSPECTIVE JUROR D []: A. I think so.

"Q. Okay. Do you understand what the charges are in this case, that they're four separate charges?

"A. Yeah.

"Q. You understand I have to prove the case?

"A. Yes.

"Q. Okay. Have you ever had any contact with illicit drugs?

"A. No.

"Q. You've never even seen anything like that?

"A. I've heard of it, but I never had any contact with drugs, no." The prosecutor passed both jurors for cause. She exercised her second peremptory challenge to excuse Hector D., and her sixth peremptory challenge to excuse Manuel S. At the time she excused Manuel S., there was apparently one Hispanic juror, Rusty B., remaining on the panel. Two Hispanic jurors had previously been removed. Rosie J. was excused by a defense peremptory challenge because she was a guard at a correctional facility, and Iris M. was excused for cause because she indicated her brother had been killed over drugs.

After Manuel S. was excused, appellant made the *Wheeler* motion on the following grounds:

"[DEFENSE ATTORNEY]: . . . It's my observation that the District Attorney is systematically excluding people with Hispanic surnames, and the first one she kicked off was Hector D[]. . . . I could see no reason for kicking him off other than that he's Mexican. Said he's a mill operator, works for a milling company . . . . His wife is a bank teller . . . . And I see no justifiable reason for excluding him other than he's Mexican, and so is my client.

". . . [T]he other juror that she just excused was Manuel S[], who stated that he is retired, . . . and the only reason I can see that she kicked him off is because he said he was born in Mexico and he's a nationalized [*sic*] United States Citizen.

"But I—it would appear to me the pattern is emerging of a systematic exclusion of people with Hispanic surnames.

"THE COURT: *All right, I'll ask the District attorney to give me reasons for the exclusion of those two prospective jurors, Miss M[]?*

"[PROSECUTOR]: Your honor, Mr. [Hector] D[] was excused because of his age and the fact that he said he'd been—he'd seen but never been involved in drugs, and he also had some problems understanding English, to my view. He was . . . very young, . . . in my mind, he didn't fit into it at all, so I excused him.

"*As to Mr. [Manuel] S[], I excused him, number one, because he was a first-generation American, and in my experience oftentimes first-generation Americans have trouble understanding the law once they get back in the jury room.*

"Also, throughout, from beginning to the point I excused him, he had his arms folded across his chest, and it looked like he'd already made up his mind either way, and he just didn't seem to work into the group dynamic." (Italics added.)

The prosecutor argued that there was no indication whether Hector D. was Mexican. "Mr. W[] [appellant's trial attorney] has to prove that I'm systematically excluding people of Mexican origin." She also argued that there had been five potential jurors with Hispanic surnames, and she had excused only two. "One of those was excused by stipulation [Iris M.], one was excused by the defense [Rosie J.] and one is still sitting on the jury panel [Rusty B., who remained on the panel]." Appellant's attorney replied that he excused Rosie J. because she was a peace officer.

The court then made the following statements: "At this particular point, due to the number of apparently Hispanic surnames and apparently Hispanic members of the jury, I cannot make a determination at this point that they are being systematically excluded, and I'm not going to make any finding at this particular point.

"I am going to watch it, I have been watching it as the jury selection process has proceeded, and I will continue to watch it. . . . Counsel is aware of that fact, so I presume that there will be good reason given for any further exclusion. To create—or to obviate any problems."

Appellant's attorney indicated he was unsure what remedy to request, whether to seek mistrial or reseat the jurors. The court responded the *Wheeler* motion was denied regardless of the remedy. The final composition of the jury included at least one Hispanic, Rusty B. A person with the surname Macedo served on the jury, but it is not clear whether he is Hispanic.

Appellant contends that (1) the court made a prima facie finding of systematic exclusion, shifting the burden to the prosecution, and (2) the prosecution failed to carry its burden of proof that it was not systematically excluding Hispanics.

*The court made a prima facie finding of exclusion*

■ Respondent contends that the court did not make a prima facie finding of systematic exclusion merely by asking the prosecutor for her reasons for the peremptory challenges.

"[W]e have stressed the importance of an express ruling by the trial court as to whether a prima facie case has been shown, thereby requiring some response or explanation by the party exercising the peremptory challenges. (See *People* v. *Turner, supra,* 42 Cal.3d at pp. 719, fn. 3, . . . 729 . . . .)" (*People* v. *Snow, supra,* 44 Cal.3d at p. 222.) In the absence of an express prima facie finding, reviewing courts have implied this initial finding through the actions of the trial court. In *Turner,* defense counsel argued the systematic exclusion of Blacks was occurring. In response, the court turned to the prosecutor and said, " 'Mr. Martin, would you like to explain?' " The prosecutor gave several reasons, and the court denied the motion. (*People* v. *Turner, supra,* 42 Cal.3d at p. 718.) The Supreme Court determined that the trial court, by its statements to the prosecutor, had made the prima facie finding. "[U]nless the trial court . . . had made at least an implied finding of group discrimination, it would have had no basis for asking the prosecutor to 'explain' the reasons for his peremptory challenges. We may therefore

fairly deem that the inquiry implied such a finding, and shifted the burden of justification to the prosecutor." (*Id.* at p. 719.)

This court has addressed the issue of an implied finding in two cases. In *People v. Granillo, supra,* 197 Cal.App.3d 110, the trial court "invited the prosecutor to respond" to the defense's *Wheeler* motion. (*Id.* at p. 117.) "This invitation arguably constituted an implied finding of a prima facie showing." (*Ibid.*) *Granillo* held that if the justifications "are heard at this early stage in the process an undoubtedly unintended implication arises that a prima facie showing has been made to the satisfaction of the court." (*Id.* at p. 122.) *Granillo* also explained that such an implication was unnecessary since the court later made an express prima facie finding.

*People v. McCaskey* (1989) 207 Cal.App.3d 248 [254 Cal.Rptr. 742] questioned whether such an invitation actually constitutes an implied prima facie finding in the absence of an express finding. In *McCaskey,* the court turned to the prosecutor after the defense made its *Wheeler* motion and simply said, " 'Ms. Begen?' " (*Id.* at p. 255.) The prosecutor responded by justifying the challenges. The court then stated it did not find a systematic exclusion of Mexican-Americans from the jury. (*Id.* at p. 256.) This court determined that the prosecutor was not asked to explain the challenges but that the court "simply provided her an opportunity to respond to defendant's motion." (*Id.* at p. 254.) In turn, the trial court's statements were interpreted as an express finding that no prima facie showing had been made. (*Id.* at p. 256.)

*McCaskey* sought to distinguish the implied findings in *Turner* and *Granillo:* "In *Granillo, supra,* this court stated that the invitation to the prosecutor to respond only 'arguably constituted an implied finding of a prima facie showing.' [Citation.] This court then held it was unnecessary to rely on an implied finding since the trial court subsequently made an express finding. Thus, the statement was also only dictum. Furthermore, *People v. Turner* (1986) 42 Cal.3d 711 . . ., upon which *Granillo* relied in making the above quoted statement, is distinguishable from this case. There, the prosecutor was specifically asked by the court 'to explain.' [Citation.] That case is further distinguishable on the basis that the Supreme Court felt the 'combination of . . . factors' in that case, not present here, clearly established a prima facie showing of group discrimination. [Citation.]" (207 Cal.App.3d at p. 256.)

*People v. Johnson, supra,* 47 Cal.3d 1194 is the most recent Supreme Court discussion of an implied prima facie finding. The trial court reacted to the *Wheeler* motion by asking the prosecutor, " 'Do you wish to respond . . . ?' " (*Id.* at p. 1217.) The Supreme Court, citing *Turner,* implied that

such statements indicated a prima facie finding. "Accordingly, we proceed to evaluate the prosecutor's explanations." (*Ibid.*)

Appellant's *Wheeler* motion was based on the alleged improper exclusion of two Hispanic jurors. Appellant recalled the voir dire of these jurors and argued that nothing in their responses or backgrounds justified a peremptory challenge, other than their Hispanic race. The court should have made an *express finding* of whether prima facie evidence existed that Hispanics were being systematically excluded from the jury, supported by a thorough and complete record. Instead, the court responded, "I'll ask the District Attorney to give me reasons for the exclusion of those two prospective jurors, . . ." Based on *Turner* and *Johnson,* the court's request for reasons of exclusion presupposed an implied finding that the prima facie evidence existed. Otherwise, there was no reason to request explanations. The prosecution should not be obligated to justify peremptory challenges unless the court has found that prima facie evidence of improper exclusion exists. By asking the prosecutor to give reasons for her challenges, the court impliedly made the requisite prima facie finding of systematic exclusion, thus shifting the burden to the prosecutor to justify the challenges.

Respondent contends that the lack of a prima facie finding can be implied from the court's subsequent statements, made after the prosecutor's justification, when it stated that it could not make a determination of systematic exclusion and would not make any finding at that point because of the number of Hispanics remaining on the jury. However, this apparent backtracking was disapproved in *Granillo.* "Although the court may have second thoughts concerning whether a prima facie showing has been made, it may not return to the screening process. The sole issue then pending is the adequacy of the justifications." (*People* v. *Granillo, supra,* 197 Cal.App.3d at p. 122; *People* v. *Barber, supra,* 200 Cal.App.3d at pp. 387-388.) The court's statements did not repeat its initial prima facie finding, but instead represented a ruling on the prosecutor's shifted burden, discussed below.

Thus, the record indicates that the trial court made an implied prima facie finding of systematic exclusion. This finding shifted to the prosecutor the burden of proving by a preponderance of the evidence that systematic exclusions were not occurring. The next issue, then, is whether the prosecutor presented valid explanations of specific bias to excuse the jurors in question.

*The prosecutor failed to justify her peremptory challenge of Manuel S.*

*Wheeler* requires a showing by the prosecution of some specific bias concerning the particular case on trial or the parties or witnesses involved

to rebut the prima facie showing of group bias. (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 273-275; *People* v. *Barber, supra,* 200 Cal.App.3d at p. 392.) While the justification need not rise to a level of challenge for cause, counsel must articulate bona fide reasons for the exercise of the peremptory challenge that would be equally applicable to any member of the venire, irrespective of whether or not that person was a member of an identifiable class, as opposed to mere "sham excuses belatedly contrived to avoid admitting acts of group discrimination." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.)

The prosecutor's primary reason for excusing Manuel S. was his status as a naturalized citizen and her perceived general inability of "first-generation Americans" to understand the applicable law. She also added that Manuel S. had his arms folded across his chest, "and it looked like he'd already made up his mind either way . . . ."

In *People* v. *Johnson* (1978) 22 Cal.3d 296 [148 Cal.Rptr. 915, 583 P.2d 774], the chief prosecution witness was expected to testify to his prior statements, including the word "'nigger.'" The defendant was Black and the prosecutor was concerned whether a Black juror could objectively weigh the testimony of the witness. (*Id.* at p. 299.) The prosecutor indicated his intent to exclude every potential Black juror regardless of what voir dire would reveal concerning possible prejudice. The Supreme Court found this reason insufficient as a matter of law. "[R]ather than trying to determine by voir dire which individual black juror was likely to be thus affected, the prosecutor simply elected to exercise a blanket challenge against all of them. This is decision-making by racial stereotype, a technique that should be anathema in our courts." (*Ibid.*)

*Rubio* v. *Superior Court* (1979) 24 Cal.3d 93 [154 Cal.Rptr. 734, 593 P.2d 595] discusses the inclusion of naturalized citizens on juries. The defendant challenged the statutory exclusion of ex-felons and resident aliens from the master list of jurors. Defendant claimed that both represented cognizable groups, and the blanket statutory exclusion on juries violated *Wheeler.* (*Id.* at p. 97.) The court acknowledged that *Wheeler* is violated when a cognizable group (such as Blacks, Hispanics, or women) is systematically excluded from a jury. (*Ibid.*) ▮ A cognizable group exists if (1) its members share a common perspective arising from their life experience in the group, and (2) no other members of the community are capable of adequately representing the perspective of the group assertedly excluded. (*Id.* at p. 98.)

The court determined that resident aliens satisfy the first requirement. "[R]esident aliens as a whole have had the experience of being excluded from the political processes of this nation by its government, and of being

the victims of both official and unofficial discrimination by its citizenry. . . . [T]hese experiences have tended to unify the group by giving its members a shared perspective on life in our society." (24 Cal.3d at pp. 98-99.)

As to the second requirement, however, the court determined that other members of the community, namely naturalized citizens, adequately represent the viewpoint of resident aliens. The court noted all naturalized citizens, at one point, were resident aliens and suffered similar educational, social, and employment restrictions. Throughout this period, naturalized citizens "shared both the disabilities and the resulting outlook of today's resident aliens. . . . These are memories not soon forgotten, and many naturalized citizens still carry with them the deep imprint of their former status. Between them and resident aliens, in this respect, there may be differences of degree but not of kind." (*Id.* at p. 100; see also *People* v. *Karis* (1988) 46 Cal.3d 612, 631-634 [250 Cal.Rptr. 659, 758 P.2d 1189].)

*Rubio*'s holding that resident aliens were not a cognizable group within *Wheeler* was dependent on the eligibility of naturalized citizens for jury duty. The statutory exclusion of resident aliens was valid because their viewpoints could be represented by naturalized citizens, a class which "rivals resident aliens in numbers." (24 Cal.3d at p. 100.) To disqualify naturalized citizens on the assumption they are unable to understand the law violates the spirit of *Rubio* and merits careful scrutiny by the court.

■ Here, the prosecutor expressly stated that her reason for excluding Manuel S. related to his status as a naturalized citizen. "[I]n my experience oftentimes first-generation Americans have trouble understanding the law once they get back in the jury room." She asked Manuel S. if he understood the concept of proof beyond a reasonable doubt. He indicated that he had no problem with the concept. Other than the prosecutor's bald assertion, there is nothing in the record to indicate that Manuel S. would have any trouble understanding the law of his adopted country. The prosecutor's statement of justification was clearly inadequate in that it was nothing more than an admission of bias (naturalized citizens being unable to understand the law) she assumed affected this juror.[2]

Respondent relies on *People* v. *Barber, supra,* 200 Cal.App.3d 378 to argue that the prosecutor was justified in relying on her experience with certain groups of potential jurors. *Barber* involved the peremptory challenge of an allegedly Hispanic teacher because it was the prosecutor's

---

[2] It is interesting to consider whether the prosecutor's blanket characterization of naturalized citizens and their inability to deal with the law would have resulted in the peremptory challenge of recently confirmed Supreme Court Justice Joyce Kennard, a naturalized citizen.

experience that "'many teachers have somewhat of a liberal background and are less prosecution oriented.'" (*Id.* at p. 389.) While there was no showing that the juror was indeed Spanish, this court held that it was valid for the prosecutor to rely on past experience that teachers are liberal. "'Many prosecutors believe various professional people are unacceptable because they may be too demanding or they look for certainty.'" (*Id.* at p. 394.)

Reliance on *Barber* is misplaced because it was not clear from the record whether the challenged teacher was Spanish and within a protected class background. "[C]ounsel must articulate bona fide reasons for the exercise of the peremptory challenge that would be equally applicable to any member of the venire, irrespective of whether or not that person was a member of an identifiable class, as opposed to mere sham excuses belatedly contrived to avoid admitting acts of group discrimination." (200 Cal.App.3d at p. 396.) In the instant case, the peremptory challenge was based on Manuel S.'s status as a Mexican-born naturalized citizen. The challenge was not equally applicable to any juror regardless of his or her origin, since by definition it was based on the foreign birth of the juror.

Respondent contends that the prosecutor's remaining reason for excusing Manuel S. was justified. The Supreme Court has recently affirmed that the prosecutor may rely on "body language" in exercising peremptory challenges. Reviewing courts should defer to the trial court's determination of the validity of such an excuse. (*People* v. *Johnson, supra,* 47 Cal.3d 1194, 1219-1221.) We conclude from a review of the record that the prosecutor primarily relied on Manuel S.'s naturalized citizenship in exercising the challenge. The court made no effort to question the prosecutor on the reasons given. To conclude from the record that the prosecutor would have excused Manuel S. solely because of his "body language" would require undue speculation on our part.

Respondent also argues that other Hispanics were removed both for cause and by the defense and that a Hispanic juror ultimately remained on the panel. ■ The propriety of the prosecutor's peremptory challenges, however, must be determined without regard to the validity of defendant's own challenges. (*People* v. *Snow, supra,* 44 Cal.3d 216, 225.) Nor does the fact that the prosecutor "passed" or accepted a jury containing minorities end the inquiry, "for to so hold would provide an easy means of justifying a pattern of unlawful discrimination . . . ." (*Ibid.*; *People* v. *Motton* (1985) 39 Cal.3d 596, 607-608 [217 Cal.Rptr. 416, 704 P.2d 176].) Although the passing of certain jurors may be an indication of the prosecutor's good faith in exercising his peremptories and may be an appropriate factor to consider, it is not a conclusive factor. (*Ibid.*) "This ignores the fact that other mem-

bers of the group may have been excluded for improper, racially motivated reasons." (*People* v. *Motton, supra,* 39 Cal.3d 596, 607-608; *People* v. *Snow, supra,* 44 Cal.3d 216, 225.)

■ Our holding should not be construed as creating a new cognizable class of naturalized citizens. Nor do we interpret *Rubio* as establishing such a class. We note, however, that the prosecutor's explanation simply did not rebut the prima facie finding of systematic exclusion. Indeed, the proffered excuse had nothing to do with any perceived "specific bias."

The prosecutor's excuse for challenging Manuel S. did not rebut, by a preponderance of the evidence, the inference of systematic exclusion flowing from the court's implied prima facie finding. A statement of justification admitting bias against naturalized citizens simply is not an adequate explanation to rebut presumed group bias against Hispanics. The prosecutor clearly relied on a blanket characterization without attempting to voir dire the juror to determine if he indeed had problems understanding the law. The exercise of the peremptory challenge clearly resulted in "decision-making by racial stereotype." (*People* v. *Johnson, supra,* 22 Cal.3d 296, 299.) The striking of a single prospective juror for group bias is reversible error per se. (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 282-283; *People* v. *Ledesma* (1987) 43 Cal.3d 171, 228, 241 [233 Cal.Rptr. 404, 729 P.2d 839].)

■ The court did not question the prosecutor's excuses for challenging Manuel S. This was error, particularly since the primary excuse given was patently invalid. The trial court must satisfy itself that the justification is genuine and the basis for that satisfaction should clearly and thoroughly be made part of the record. (*People* v. *Hall* (1983) 35 Cal.3d 161, 167 [197 Cal.Rptr. 71, 672 P.2d 854].) "This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily, for 'we rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination.' [Citation.]" (*Id.* at pp. 167-168.) Having concluded that the prosecution did not validly justify its exclusion of Manuel S., it is unnecessary to assess its justification for excluding Hector D.

■ The right to trial by a jury drawn from a representative cross-section of the community is guaranteed by both the Sixth Amendment to the federal Constitution and by article I, section 16 of the California Constitution. It is the court's obligation to respect the mandate that a fair and

impartial trial is a fundamental aspect of the right of accused persons not to be deprived of liberty without due process of law. (*Berger* v. *United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321, 55 S.Ct. 629].) "It therefore becomes the responsibility of our courts to insure that this guarantee not be reduced to a hollow form of words, but remain a vital and effective safeguard of the liberties of California citizens." (*People* v. *Wheeler, supra,* 22 Cal.3d 258, 272.)

## DISPOSITION

The judgment is reversed.

Franson, P. J., and Martin, J., concurred.