[No. B085266. Second Dist., Div. Four. June 27, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
KAJAUNA KENYATTA IRVIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*The opinion is certified for publication with the exception of the indicated portions of the facts and parts 2-4 of Discussion.

## COUNSEL

Gary Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.**—Kajauna Kenyatta Irvin appeals from the judgment entered following a jury trial that resulted in his convictions of first degree murder during which offenses he used a firearm (Pen. Code, §§ 187, subd. (a), 12022.5, subd. (a); counts 1, 2)[1] and a true finding on the multiple-murder special-circumstance allegation (§ 190.2, subd. (a)(3)). He was sentenced to prison for the total term of life without possibility of parole, plus a consecutive two-year term on the use enhancement in count 1.

Appellant contends the judgment must be reversed for the reason that the prosecutor's impermissible use of peremptory challenges to excuse two Black jurors solely on the basis of group bias violated his state constitutional right to trial by a jury drawn from a representative cross-section of his community (Cal. Const., art. I, § 16; *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) and his federal constitutional guarantee of equal protection of the law (U.S. Const., 14th Amend.; *Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712]).

Appellant also assigns three basic instructional errors. He contends his right to a fair jury trial under the Sixth Amendment of the federal Constitution was abridged when the trial court erroneously instructed the jury on his defense of justifiable homicide by giving an improper and irrelevant definition of "forcible and atrocious crime" and by instructing the jury that this defense applied only if appellant believed he or his codefendant were going to be robbed or murdered. He further contends that his right to due process (U.S. Const., 14th Amend.) and his right to have the jury determine every material issue presented by the evidence (U.S. Const., 6th Amend.) were

---

[1]All further section references are to the Penal Code.

violated when the trial court failed to instruct the jury on the theory that the killing of Delvin Moore, the victim in count 2, occurred upon a sudden quarrel or heat of passion. His final contention is that he was denied his right to due process (U.S. Const., 14th Amend.) when the trial court failed sua sponte to give CALJIC No. 8.73 on the existence of provocation and its bearing on the degree of murder.

Based on our review of the record and applicable law, we find appellant's contentions to be unmeritorious and affirm the judgment.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that on December 26, 1988, around 4:30 or 5:30 p.m. Delvin Moore went to the apartment of Leroy Hayes to sell drugs. A couple of hours later, Moore handed his gun to Beverly Evans, his girlfriend, and left. Upon his return Evans gave Moore back his gun and left. At some point, Moore put the gun in a brown paper bag which he then placed on the bottom level of the coffee table in front of the couch. Hayes did not see Hussein Washington, who was also there that night, with a gun. Shortly thereafter, Moore pulled out a plastic bag containing enough rock cocaine to fill a small coffee cup.

Around 9:30 p.m., appellant appeared at the front door and asked to see Moore. Moore told Hayes to let him in. Once inside, appellant had a friendly conversation with Moore about going to Kansas City. The two were sitting on the love seat along the southern wall.

About 30 minutes later, appellant announced he was going to the bathroom, stood up and walked down the hallway in the direction of the bathroom and out of sight. Within 15 to 30 seconds, appellant reappeared suddenly and rushed back into the living room firing a gun toward Moore and Washington. At the time of appellant's attack, Moore was still seated on the love seat, and Washington had not moved from the chair near the front door where he sat with his back toward the eastern wall. Prior to the attack, no one in the apartment had pointed a gun at appellant, rushed at him, or made any motion toward him. Hayes never saw Moore or Washington brandish a weapon.

While attempting to flee out the back door, Hayes fell unconscious on the kitchen floor. He had been shot once in the back and also in the back of his upper thigh. Upon regaining consciousness, Hayes noticed Moore was lying on the floor near the Christmas tree, which was in the southwest corner between the love seat and the couch. Washington was also lying on the

living room floor. His head was pointed towards the front door and his arm was in the doorway. Appellant was gone. Also missing was Moore's plastic bag containing the cocaine.

Moore, who suffered three gunshot wounds, was killed by two independently fatal gunshot wounds, one to his head and another to his back. Washington suffered four gunshot wounds apparently from three bullets. The gunshot wound to his head and the one through his heart were each fatal.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

Appellant admitted killing Moore and Washington. However, he denied quarreling or arguing with Moore prior to the shooting. He also denied taking any money, jewelry, or narcotics from Moore, Washington, or anyone else. Appellant presented evidence to show that he shot Moore in self-defense and Washington in defense of another.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

### DISCUSSION

### 1. *No Wheeler Violation Shown*

Appellant makes a two-pronged attack on the prosecutor's peremptory challenges of two Black jurors, Carole P., the subject of his third *Wheeler* motion, and Donald P., the subject of his fourth *Wheeler* motion.[2] Initially, he contends the excusal of those jurors, which was based solely on the improper reason of group bias, violated his guarantee under the state Constitution to trial by a jury drawn from a representative cross-section of his community (Cal. Const. art. I, § 16). He then contends that this improper excusal of the jurors also violated his guarantee under the federal Constitution to equal protection of the law (U.S. Const., 14th Amend.). We find ample evidence to support the trial court's finding that appellant failed to carry his initial burden to make a prima facie showing that the prosecutor's excusal of Donald D. was not based on a race-neutral ground. We also find ample evidence to support the trial court's finding that the prosecutor's excusal of Carole P. was for a race-neutral reason.

### a. *Factual Summary*

After the prosecutor, Ms. Bouas, exercised two of three peremptory challenges to excuse Black jurors Yolanda G. and Dolores B., appellant, who

---

*See footnote, *ante*, page 1340.

[2]He does not challenge the rulings on the remaining three *Wheeler* motions.

is Black and was representing himself, made his first oral motion under *People* v. *Wheeler*, *supra*, 22 Cal.3d 258. In support of this motion appellant proffered certain statistics, about which he admitted he was not sure, concerning the racial composition of Blacks in Los Angeles County in comparison with that of the jury pool, and argued that both jurors lacked any bias against the prosecution.

After review of the juror questionnaires, the trial court noted that at least three Black jurors were still on the panel and found no prima facie case had been shown.[3] When the court allowed the prosecutor an opportunity to make a record, the prosecutor voluntarily described in detail her reasons for the two challenges.[4] After further argument, the court denied the motion based on the lack of a prima facie showing of group bias under *Wheeler* and *Batson* v. *Kentucky*, *supra*, 476 U.S. 79.

In his second oral *Wheeler* motion, appellant argued that the prosecutor exercised six of her eight peremptory challenges thus far to excuse Black jurors. In particular, he was concerned about the excusal of Thelma M. The trial court found a prima facie case based on the reasons that six out of eight jurors constituted a very high percentage to be excused from the same racial group and it could not find any reason to distinguish Thelma M. from the other jurors.[5] In so doing, however, the court expressly explained that it was not taking into account the prosecutor's reasons for excusal of the two Black jurors who were the subject of appellant's initial *Wheeler* motion.

Based on the detailed reasons given by the prosecutor for her excusal of Thelma M. and three other Black jurors, and her previously given reasons for excusal of the initial two Black jurors, the court found that each of the six challenges was justified and based on a race-neutral ground.[6] The court

---

[3]Those Black jurors were Felicia R., Thelma M., and Donald D. The court noted that Jermaine B., who had not yet been examined, was also Black.

[4]Ms. Bouas explained that she excused Yolanda G. for the reason that this case involved robbery and her husband had been convicted of robbery. She excused Dolores B. for the reasons that she appeared to be sleeping and inattentive, that she said "she would give him the benefit of representing himself[,] and "she gave [Ms. Bouas] the impression she would be looking to disbelieve people, rather than just being open about listening to someone's story[,]" that "she was looking in her mind to start[] out on the disbelieving end[,]" which evidenced bias on her part, and her mind-set regarding the law.

[5]The court noted that at this juncture three Black jurors, Ellis G., Jermaine B., and Donald D., remained. Appellant had exercised a peremptory to excuse Felicia R., who was Black.

[6]Ms. Bouas explained that she excused Thelma M. for the reason that as a retired Department of Social Services employee who had worked for some 30 years, she was the type of person who was on "the helper side of society" and has "a tendency to blame society rather than an individual for [his or her] actions." She excused her for the additional reason that based on her answers to questions about family members who were victims of crimes, Ms. Bouas felt that she either could not handle things like that or she was complacent about

then placed on the record its analysis of each of those panelists.[7]

Appellant made his third oral *Wheeler* motion after the prosecutor excused Carole P., the seventh Black panelist challenged. When the prosecutor attempted to justify the challenge based on the fact "this is a one witness I.D. case," the trial court interrupted and stated that she was premature. Appellant's attorney argued it would be unfair to exclude Carole P. simply because she indicated she would be highly skeptical of witnesses' testimony. He added that he felt the prosecutor was "systematically excluding those Black female jurors that speak their mind and are objective." The court denied the motion on the ground that no prima facie case was shown because "[t]here are distinctive differences as to [Carole P.], and as Miss Bouas had already indicated in the area of eyewitness identification."[8]

---

homicide. She excused Edna A. for the reason, that she admitted that her .job basically involved compromising, which meant she was a "pleaser," rather than someone who would view the evidence and form an opinion based on the evidence. As for Patricia H., the prosecutor explained that she was a friend of Ron Settles, the victim in a high publicity case, and she believed that he was murdered by the police. With regard to Camille J., the prosecutor explained that she expressed doubts about the system based on her perception that she was not treated fairly because her daughter was removed from her home based on a child abuse problem.

[7]In response to appellant's complaint about the gender of the excused jurors, the court "note[d] that each of the Black jurors that was challenged was a female, and that is a separate sub category [*sic*]." The court then analyzed the proffered reasons by the prosecutor. It found that although Dolores B. was not sleeping, she was inattentive, which was a sufficient, race-neutral reason for her excusal; that Yolanda G. was excused for specific bias based on her husband's situation; that Camille J.'s anger towards society was a legitimate prosecutorial concern; that Patricia H.'s strong concern about the Settles case justified her excusal; that Edna A.'s dedication to mediation made her "less than a good prosecution juror"; and that excusal of Thelma M., a longtime social worker, was justified also on that basis as well as her references to her relatives who were crime victims.

[8]On the issue of eyewitness identifications, the following colloquy ensued: "THE COURT: Miss Bouas, any additional questions? [¶] Ms. BOUAS: Yes. [¶] THE COURT: What page? [¶] Ms. BOUAS: It has to do with her answer on page 10. [¶] THE COURT: On page 10? I didn't ask one on that page. [¶] Ms. BOUAS: The last question. No, you didn't. [¶] THE COURT: Oh, okay. The last question about all eyewitness observations not accurate. You've suggested that they're too often incorrect. Would you explain that answer. [¶] PROSPECTIVE JUROR P.: Something happens and 15 people are present, you get 14 different answers. [¶] THE COURT: Okay. [¶] PROSPECTIVE JUROR P.: And if you got them to agree on the basics, there would always be some things they don't agree on, the color of the car, the dress color somebody was wearing, so often they're not accurate, but I guess in a trial, like with my job, I use what I get. [¶] THE COURT: Is your opinion based in part on your job, the experiences you've had there? [¶] PROSPECTIVE JUROR P.: That and reading and having children and everything, that sometimes people will be right there—I think mostly, one thing I notice was people who will look at a television program, and they'll all come to work talking about it the next day, and you keep thinking I watched that, I didn't see that. [¶] So, you know, something like that. Everybody doesn't see the same thing. [¶] THE COURT: Okay. [¶] Ms. BOUAS: Her last, can you just have her explain too the last part of that line there too, Your Honor, where she says requires caution. [¶] THE COURT: Any comment on that part? [¶] PROSPECTIVE JUROR P.:

The court also explained that although a "higher" percentage of Blacks had been challenged, all of the prior challenges had been justified and this challenge did not compel the court to alter its ruling as to those others.

Appellant made a fourth *Wheeler* motion based on the prosecutor's challenge of Donald D., a Black male. He argued that the prosecutor was acting in a racially motivated manner and renewed his assertion that she was systematically excluding Black women who possessed "objectivity."

The trial court found appellant had failed to make the requisite prima facie showing. It explained that despite the high percentage of Blacks challenged, the prosecutor already had explained in detail to the satisfaction of the court the race-neutral reasons for excusal of the initial six jurors and that both Carole P. and Donald D., the last two jurors challenged, possessed "sufficient distinguishing factors that separate them from the jurors that remained."[9]

The court specifically noted that "[i]t is obviously a concern that so many of the jurors who have been excused are Black jurors, and that's why I declared a prima facie case earlier and have been looking closely at those excused since then and [I] do not find a prima facie case."

The fifth and final *Wheeler* motion was made when the prosecutor excused James B., Jr., a Black male. The trial court found that appellant had failed to make the requisite prima facie showing. It explained that James B., Jr., was distinct from the other jurors because he counseled youth offenders and possessed a doctor of divinity degree.

The jury as seated included two Black males and two Black females. At least one Black female and a Black male juror were sworn as alternates.

---

Could you read the whole thing. [¶] THE COURT: You said too often incorrect, too often subjective, requires caution? [¶] PROSPECTIVE JUROR P.: Not so much caution but strict attention. It think you really have to pay attention to what people say they saw."

[9] During voir dire the court asked Donald D. about his response in the questionnaire regarding his wife pulling out a gun, which caused the two men who attacked her to back off. He informed the court that his wife carried a gun for protection because she worked the night shift for the school district and was aware that two particular persons had harassed some women there. She was in the basement when two individuals entered, locked the door behind them, and approached her. When she pulled out her gun, the two unlocked the door and left. When asked if she informed the police and whether she normally carried a gun or just armed herself for that one purpose, he replied, "[S]he armed herself for that one purpose, but she always [has] been an individual that take[s] care of herself. So she didn't notify the police after the incident, no."

### b. *Standard of Review*

 "Peremptory challenges are permissible only if they are based on specific bias," namely, " 'a bias relating to the particular case on trial or the parties or witnesses thereto.' " (*People* v. *Tapia* (1994) 25 Cal.App.4th 984, 1013 [30 Cal.Rptr.2d 851].)

"It is well settled that the use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias based on membership in a racial group violates both the state and federal Constitutions. (*People* v. *Wheeler, supra,* 22 Cal.3d [258] at pp. 276-277; *Batson* v. *Kentucky* (1986) 476 U.S. 79, 89 [90 L.Ed.2d 69, 82-83, 106 S.Ct. 1712]; [citation].) Under *Wheeler* and *Batson,* ' "[i]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, . . . he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a *strong likelihood* that such persons are being challenged because of their group association." ' (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1153-1154 [5 Cal.Rptr.2d 268, 824 P.2d 1315], italics in original; *People* v. *Garceau* (1993) 6 Cal.4th 140, 171 [24 Cal.Rptr.2d 664, 862 P.2d 664].)

"If the trial court finds that the defendant has established a prima facie case, the burden shifts to the prosecution to provide 'a race-neutral explanation related to the particular case to be tried' for the peremptory challenge. (*People* v. *Fuentes* [(1991)] 54 Cal.3d [707] at p. 714 [286 Cal.Rptr.2d 792, 818 P.2d 75]; *Batson* v. *Kentucky, supra,* 476 U.S. at p. 97 [90 L.Ed.2d at p. 88].) However, the explanation need not be sufficient to justify a challenge for cause. (*Batson* v. *Kentucky, supra,* 476 U.S. at p. 97 [90 L.Ed.2d at p. 88]; see *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1216 [255 Cal.Rptr. 569, 767 P.2d 1047].) . . .

 "There is a presumption that a prosecutor uses his or her peremptory challenges in a constitutional manner. (*People* v. *Clair* (1992) 2 Cal.4th 629, 652 [7 Cal.Rptr.2d 564, 828 P.2d 705].) We give great deference to the trial court in distinguishing bona fide reasons from sham excuses. (*People* v. *Fuentes, supra,* 54 Cal.3d at p. 714; *People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.) Additionally, '[i]f the record "suggests grounds upon which the prosecutor might reasonably have challenged" the jurors in question, we affirm.' (*People* v. *Howard, supra,* 1 Cal.4th at p. 1155, quoting *People* v. *Bittaker*

(1989) 48 Cal.3d 1046, 1092 [259 Cal.Rptr. 630, 774 P.2d 659].)" (*People* v. *Turner* (1994) 8 Cal.4th 137, 164-165 [32 Cal.Rptr.2d 762, 878 P.2d 521]; accord, *People* v. *Crittenden* (1994) 9 Cal.4th 83, 117 [36 Cal.Rptr.2d 474, 885 P.2d 887].)

c. *Application of Standard*

Mindful of the above principles, we conclude that, contrary to appellant's assertion, the trial court's finding of a prima facie showing as to the second *Wheeler* motion was not binding on the trial court with regard to the remaining *Wheeler* motions. The fallacy with appellant's position is his premise that *Wheeler* envisions a motion in the nature of an objection which, once made, is continuous until the exhaustion of all peremptory challenges against members of the group in question or the conclusion of voir dire. In this regard, he misapprehends both the nature and structure of a *Wheeler* motion. Although *Wheeler* motions may be made seriatim, each *Wheeler* motion is itself separate and discrete and is resolved definitively and independently of each other.

In this regard, *Wheeler* held: "If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges *in question* were not predicated on group bias alone." (*People* v. *Wheeler, supra*, 22 Cal.3d at p. 281, italics added.) It further held: "If the court finds that the burden of justification is not sustained as to any of the *questioned* peremptory challenges, the presumption of their validity is rebutted." (*Id.* at p. 282, italics added.)

"In ruling on a *Wheeler* motion, a trial court has no 'range' of options. If the prosecutor's explanation is disbelieved then the court must grant the motion and begin jury selection anew. . . . Conversely, if the trial court finds the prosecutor's explanation credible and supportive of his or her peremptory challenges independent of group bias, the court must deny the motion . . . . Once the factual issue is decided, the trial court's disposition of the motion is mandatory, not discretionary." (*People* v. *Jackson* (1992) 10 Cal.App.4th 13, 22 [12 Cal.Rptr.2d 541], citation omitted; accord, *People* v. *Tapia, supra*, 25 Cal.App.4th at pp. 1013-1013; cf. *People* v. *Perez* (1994) 29 Cal.App.4th 1313, 1320-1330 [35 Cal.Rptr.2d 103].)

We hold that once a prima facie showing has been refuted, it is incumbent on the moving party to make a new prima facie showing with regard to any subsequent *Wheeler* motion pertaining to different jurors of the identified group from the venire. Subsequent *Wheeler* motions, however, may be based on evidence presented in prior *Wheeler* motions, to the extent

necessary to establish a discriminatory pattern of peremptory challenges. (But see *People* v. *Wheeler*, *supra*, 22 Cal.3d at p. 282; *People* v. *Gonzalez* (1989) 211 Cal.App.3d 1186, 1193 [259 Cal.Rptr. 870] [a single discriminatory peremptory requires dismissal of the selected jurors and quashing of the remaining venire].)

The rationale behind requiring a prima facie showing to be made anew is the requirement that in making a prima facie showing the defendant must focus on the particular circumstances of the specific peremptories in question. In other words, a claim that "all of the challenged prospective jurors were Black and either indicated that they could be fair and impartial or in fact favored the prosecution" is insufficient to establish a prima facie showing. (*People* v. *Turner*, *supra*, 8 Cal.4th at pp. 167-168.) ██ "A defendant may not simply rely upon exclusion of the group-associated prospective jurors in establishing 'a strong likelihood' of removal because of group bias. [Citation.] Rather, a defendant should underscore 'other relevant circumstances, such as prospective jurors' characteristics, the nature of the prosecutor's voir dire, or the prospective jurors' answers to questions.' " (*People* v. *Bernard* (1994) 27 Cal.App.4th 458, 466 [32 Cal.Rptr.2d 486] review den., quoting from *People* v. *Howard*, *supra*, 1 Cal.4th 1132, 1154.) ██ Accordingly, once a *Wheeler* motion has been denied because the prosecutor provided a valid reason for excusal of the particular jurors, the defendant is required to show the relevant circumstances giving rise to a prima facie showing of group bias as the reason for excusal of other jurors of the group in question.

Appellant relies on *People* v. *Fuentes* (1991) 54 Cal.3d 707 [286 Cal.Rptr. 792, 818 P.2d 75] and *People* v. *Granillo* (1987) 197 Cal.App.3d 110 [242 Cal.Rptr. 639] as authority for the proposition that once a prima facie case has been made the court cannot return to the screening process, i.e., find no prima facie showing, and the prosecutor must then justify all peremptory challenges made to a member of that group thereafter until the conclusion of voir dire.

His reliance on those cases is misplaced. Initially, we point out that neither *Fuentes* nor *Granillo* concluded that in every instance the prosecutor must justify each and every subsequent peremptory made as to members of the group in question until the conclusion of voir dire, once a finding of a prima facie showing has been made. Moreover, those cases are factually distinguishable. Finally, this conclusion is contrary to the principle that a *Wheeler* claim may be waived as to a particular juror by the failure to renew it as to that juror. (*People* v. *Dunn* (1995) 40 Cal.App.4th 1039, 1053 [47 Cal.Rptr.2d 638] (review den.).)

*People* v. *Fuentes*, *supra*, 54 Cal.3d at pages 711-713, involved two separate *Wheeler* motions, after which the court considered the defendant to have made a " 'continuing motion.' " With regard to the first motion the court asked the prosecutor for an explanation but the prosecutor stated he was not prepared to give any until he had a chance to go over some records. The court did not inquire into the prosecutor's reasons as to the second motion. The court did not in fact expressly address "the *Wheeler* motion" until conclusion of voir dire at which time the court instructed the prosecutor to get his materials in order to put his reasons for excusing Blacks in the record.

"After hearing the prosecutor's justifications, the court commented: 'Well, in reviewing the cases, I find that I probably should have ruled on whether there was a prima facie showing that established a systematic exclusion. And I failed to do so. However, in reviewing the matter, I would indicate that I find that there was no prima facie showing that there was a systematic exclusion.' " (54 Cal.3d at p. 716.)

*Fuentes* concluded the trial court appeared to have been confused regarding the steps to be taken in a *Wheeler* analysis, which first requires a prima facie showing of group bias, consideration of the prosecutor's justifications, and then a ruling on the adequacy of those justifications. It rejected the People's contention on appeal that the trial court's express finding of no prima facie showing effectively disposed of the *Wheeler* issue. (54 Cal.3d at p. 716.)

It was in this context that *Fuentes* stated that by asking the prosecutor for reasons in connection with the first *Wheeler* motion, the trial court had made an implied finding of a prima facie showing and "once the trial court has ruled, expressly or by implication, that a prima facie case has been made and that the burden has shifted to the prosecution, the court may not then 'return to the screening process. The sole issue then pending is the adequacy of the justifications.' (*People* v. *Granillo*[, *supra*,] 197 Cal.App.3d 110, 122; see also *People* v. *Gonzalez*, *supra*, 211 Cal.App.3d 1186, 1198.)" (54 Cal.3d at pp. 716-717.)

In contrast to *Fuentes*, this case involves the situation where the court explicitly found a prima facie case, obtained the prosecutor's explanations, and found that the prima facie showing had been rebutted as to the *particular* challenges at issue. The court was not "revisiting" the issue of a prima facie showing as to those challenges when it found that defendant had failed to make a prima facie showing as to the new, *subsequent* challenges to different jurors of that group. Thus, *Fuentes* is factually inapposite.

Similarly, *Granillo* is factually inapposite. That case involved a *Wheeler* motion which was made "after the jurors, including two alternates, were selected, but before they were sworn." (*People v. Granillo, supra,* 197 Cal.App.3d at p. 116.)

*Gonzalez* is also inapplicable for the reason that its conclusion that the trial court was precluded from revisiting the implied finding of a prima facie showing based on its inquiry of the prosecutor for justifications arose in the context of a single *Wheeler* motion. (*People v. Gonzalez, supra,* 211 Cal.App.3d at pp. 1193-1196, 1198.) Here, appellant made five separate and distinct *Wheeler* motions.

■ With regard to the excusal of Carole P., we conclude the issue of a prima facie showing to be moot for the reason that the prosecutor volunteered her justification before the trial court had the opportunity to determine whether or not a prima facie showing had been made by appellant. Under these circumstances, we directly address the adequacy of the prosecutor's proffer. (*People v. Sims* (1993) 5 Cal.4th 405, 429 [20 Cal.Rptr.2d 537, 853 P.2d 992]; *People v. Fuentes, supra,* 54 Cal.3d at p. 717; cf. *People v. Arias* (1996) 13 Cal.4th 92, 135-136 [51 Cal.Rptr.2d 770, 913 P.2d 980]; *People v. Turner, supra,* 8 Cal.4th at pp. 166-167.) The record clearly established a specific nongroup- or nonrace-related reason for excusing Carole P. Her response on voir dire revealed her bias against eyewitness identification. This logically rendered her an unfavorable prosecution witness since the People's case rested almost exclusively on one eyewitness's account of what happened. We therefore conclude that the trial court properly found the proffered justification to be race-neutral.

■ We further conclude that the trial court properly found no prima facie showing was made with regard to the fourth *Wheeler* motion, and thus, the prosecutor was not required to justify her excusal of Donald D.

Appellant's primary defense was self-defense. Donald D.'s wife embraced a belief in self-help rather than reliance on the police, and on one occasion she armed herself with a gun with the express intent to protect herself against two individuals whom she knew had harassed women where she worked. When confronted by those persons, she in fact pulled out her gun, pointed it at them, and caused them to flee. These circumstances indicated Donald D. may be biased in favor of the defense. Accordingly, the prosecutor could have challenged Donald D. without violating the group bias proscription of *Wheeler*. (See, e.g., *People v. Turner, supra,* 8 Cal.4th at 165.) The trial court was therefore not required to ask the prosecutor to justify her challenge of Donald D.

Additionally, we note both sides excused Black jurors and the prosecutor accepted a jury which, as impaneled, included Black jurors. Although not conclusive, this latter factor "is an indication of good faith in exercising peremptories, and an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection." (8 Cal.4th at p. 168.)

Based on the foregoing, we conclude the prosecutor's use of peremptory challenges to excuse Carole P. and Donald D. did not violate appellant's right to a jury drawn from a representative cross-section of the community (Cal. Const., art. I, § 16) or his guarantee of equal protection of the laws (U.S. Const., 14th Amend.).

2.-4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Epstein, J., and Baron, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1996.

---

*See footnote, *ante*, page 1340.