[No. F009766. Fifth Dist. Jan. 19, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DARWIN McCASKEY, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Richard L. Phillips and Linnea M. Johnson, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson, Raymond L. Brosterhous II and Shirley Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, J.**—Defendant was convicted by jury of burglary of a dwelling (count I; Pen. Code,[1] § 459) and then admitted a prior felony conviction for burglary alleged pursuant to section 667.5, subdivision (b).

Defendant was sentenced to the middle term of four years on count I and a consecutive one-year term for the prior.

### STATEMENT OF FACTS

On the evening of July 29, 1987, Jeff Landon left his residence to play racquetball at the Riverbank Fire Department station house about one block from his home. After his racquetball game, Landon heard his dogs howling, which was unusual, so he went home to investigate.

When Landon entered his house, he saw defendant in the hallway about eight feet away; both defendant and Landon then fled in opposite directions. Landon then heard one of his doors slam and a commotion in the woodshed.

As Landon was reporting the incident to the police on the telephone, he observed defendant in the alley behind his house. In assessing the situation, Landon decided it was safest for him to get into his car and leave the area. While backing up his car, Landon saw defendant in the alley, shined his headlights on him and saw defendant move away carrying an object.

Officer Sauls of the Riverbank Police Department responded. He observed defendant in the alley, lying in an airshaft for the building next door to Landon's residence. Defendant began to run away but was caught after a short foot pursuit, handcuffed and placed in the rear of the police vehicle. Officer Sauls then questioned defendant after proper *Miranda (Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed. 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) waivers. Defendant initially denied but then admitted entering the Landon residence "looking for food."

Mr. and Mrs. Landon both testified defendant did not have permission to enter their residence.

Defendant presented no evidence in his defense.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## DISCUSSION

## I

### *Did the Trial Court Err by Denying Defendant's Wheeler Motion?*

After the prosecution had peremptorily challenged prospective jurors Esther Wright, Mary Renteria and Elidio Lugo, defendant moved to dismiss the jury panel pursuant to *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. Defendant contends the trial court prejudicially erred in denying the motion.

■ "A prosecutor's use of peremptory challenges is presumed to be constitutionally permissible. This presumption may be rebutted if the defendant establishes a prima facie case that the prosecutor has challenged jurors on the basis of group bias alone." (*People* v. *Rousseau* (1982) 129 Cal.App.3d 526, 536 [179 Cal.Rptr. 892].)

■ In *Wheeler,* the Supreme Court set forth the procedures for raising a claim of unconstitutional, discriminatory exclusion of jurors: "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, . . . he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group . . . . Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.

". . . . . . . . . . . . . . . . . .

"[T]he court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone. . . .

"If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone. . . .

"If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section require-

ment, and it must dismiss the jurors thus far selected. . . . Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew." (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 280-282, fns. omitted.)

■ *Wheeler* suggested several factors to determine a strong likelihood of group bias. The moving party "may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 280.) Alternately, the moving party may demonstrate that the jurors in question have only their group identity in common and that, apart from this group identity, they are as heterogeneous as the community as a whole. The offended party may also show that his opponent failed to engage the jurors in question in more than desultory voir dire, indicating his previous plan to remove those jurors. (*Ibid.*)

■ While acknowledging the above factors for determining whether a prima facie case has been established, defendant concludes without meaningful discussion or analysis that a prima facie case was established. Defendant states: "In the instant case, Renteria and Lugo, both prospective jurors with Hispanic surnames, had been peremptorily excluded. A prima facie showing had been made under [*People* v. *Trevino* (1985) 39 Cal.3d 667]. After the *Wheeler* motion was denied, the prosecutor also peremptorily excluded prospective juror Saldivar. All the Hispanic surnamed jurors were excluded, three by the means of a peremptory challenge, and *no* Hispanic jurors remained on the jury." (Italics in original.)

We reject defendant's contention for the reasons that follow.

First, while *People* v. *Trevino, supra,* did hold that a showing that jurors are being excluded on the basis of a Spanish surname alone constitutes a prima facie case of exclusion of a cognizable class, defendant is still required to make this showing based on the *Wheeler* factors outlined above, i.e., defendant must show a strong likelihood that such persons were challenged because of their group association and not specific bias. This defendant has failed to do. It is clear that the showing here did not establish a prima facie case as a matter of law.

Several cases indicate that a prima facie case is not established under circumstances similar to those herein. (See, e.g., *People* v. *Harvey* (1984) 163 Cal.App.3d 90, 108-111 [208 Cal.Rptr. 910] [unexplained challenge of two Black jurors not a prima facie showing, especially where another member of cognizable group left on jury and trial court found challenges were reason-

able]; *People* v. *Rousseau, supra,* 129 Cal.App.3d 526, 536 [prosecutor's exercise of peremptory challenges against the only two available Black jurors did not establish prima facie case of systematic exclusion]; *People* v. *Dominick* (1986) 182 Cal.App.3d 1174, 1193-1196 [227 Cal.Rptr. 849] [prosecutor's use of peremptories to challenge every minority prospective juror was not a prima facie showing of exclusion, especially where there were no "race factors" in the case]; *People* v. *Boyd* (1985) 167 Cal.App.3d 36, 48-49 [212 Cal.Rptr. 873] [exclusion of three out of five Black jurors did not constitute a prima facie case].)

In the instant case, contrary to defendant's contention, a Spanish surnamed juror, Debbie Ramos, was seated in the jury box at the time of the *Wheeler* motion and was ultimately seated as a juror in this case. Furthermore, defendant fails to point out with regard to the exclusion of potential juror Saldivar that the defense not only never challenged the exclusion, but even made it clear on the record that the prosecutor's challenge was properly made.

In his reply brief, defendant inexplicably shifts gears, no longer contending that Saldivar was improperly excluded and instead contending that potential juror Wright was a Hispanic whose exclusion was a factor in establishing a prima facie case. Again, the record simply does not support defendant's contention. Defense counsel did raise the issue of Wright's ancestry, indicating he believed she was Hispanic. Defense counsel failed, however, to establish his claim, as was his burden under *Wheeler,* and the trial court disagreed with his opinion as to Wright's ancestry. Defendant does not cite to the record to support his premise that Wright is Hispanic. Therefore, defendant has failed to establish that he made a prima facie case which would require the prosecutor to justify her peremptory challenges.

Also in his reply brief, defendant argues that the trial court implicitly found a prima facie case when it required the prosecutor to justify her peremptory challenges. (Citing *People* v. *Granillo* (1987) 197 Cal.App.3d 110, 117 [242 Cal.Rptr. 639], but providing no citation to the record.) Again, the record does not support defendant's contention. The court did not call upon the prosecutor to explain, but simply provided her an opportunity to respond to defendant's motion. The entire motion and its disposition were as follows:

"MR. CHASE: Yes, Your Honor. I have observed the District Attorney's Office has made three chellenges [*sic*] so far. Now, I appreciate that Miss Wright's name was not—is not of Hispanic ancestry, but I would note to the Court that I—in my own observation of her, and I thought that she probably was of Mexican-American ancestry. *I'm not saying for a fact that*

*she was, but in my humble opinion,* I thought that she quite probably had some—was of Mexican-American ancestry who had in fact married and developed a name that was Anglo.

"There's two other jurors that she has desired to preempt off. One is Mr. Lugo and one is Renteria.

"I believe that there is no possible justification for excluding these people of Mexican-American ancestry. I appreciate Miss Wright did indicate a feeling that her son had been maybe mistreated by the District Attorney's Office, and *I really don't have too much reason to feel that that challenge was necessarily improper.*

"But to challenge both Mr. Lugo and Miss Renteria, along with the fact that those are two of only three Hispanics that have been called before this juror—jury, I don't believe that there is—I believe that there seems to be a systematic exclusion, and it—we have only one other—I thought about waiting until she challenged that other person, Mrs. Ramos, but by then I knew it would be too late.

"THE COURT: Ms. Begen?

"Ms. BEGEN: Your Honor, Mrs. Wright appeared to me to be as Caucasion [*sic*] as I am. She was challenged because of her son's criminal history and his problems with the District Attorney's Office. I felt she might have a great deal of sympathy for the Defendant.

"Mr. Lugo was challenged not because he was Hispanic or Mexican-American, but because he had sat on a hung jury, and I've had difficulty with people on hung juries in the past.

"Mrs. Renteria had some other problems, and it had nothing to do with her ethnic background. I simply felt very uncomfortable with her attitude towards the proceedings. She seemed indifferent and bored, she wasn't paying any attention, and for those reasons I exercised my peremptory challenge. It had absolutely nothing to do with her ethnic background.

"THE COURT: The Court with respect to Mrs. Wright, I—my observation of her was that—and I will be the first to confess I'm no expert, but she did not appear to this Court to be Mexican-American extraction, but as I said, I don't purport to be an expert. There may have been something in her background, but she did not appear to be, on the face of it, to be Hispanic or Mexican-American. But even if she were, the statement by the Deputy District Attorney, and her background, and I think Mr. Chase acknowl-

edged this, that—and at least I find that it's perfectly legitimate to exercise the challenge because her son was on parole, and I could see the District Attorney's concern about that.

"With respect to Mr. Lugo, he did in fact sit—prior jury experience as a juror, and did in fact participate in a hung jury and that to me is a legitimate concern to the District Attorney's Office.

"It's always been my impression that once you've been on one hung jury it's not so difficult to be on another one. And that, to me, was a valid reason.

"Miss Renteria, I think that the reason given by the prosecutor is her indifference. I don't know if I would characterize it as indifference, but she did not—maybe it was just her personality, but she did not seem too animated, *but I don't find that there has been a systematic exclusion of Mexican-Americans from this jury.* And the motion under *Wheeler* is denied." (Italics added.)

By finding no systematic exclusion, it appears clear that the court not only did *not* impliedly find a prima facie case had been made, but to the contrary, it *expressly* found that *no* prima facie showing had been made. (Compare *People* v. *Dominick, supra,* 182 Cal.App.3d at p. 1194.) The fact that the prosecutor tried to justify her challenges even though the court did not call upon her to do so did not preclude the court's finding that there was in fact no prima facie showing in the first instance.

In *Granillo, supra,* this court stated that the invitation to the prosecutor to respond only "arguably constituted an implied finding of a prima facie showing." (*People* v. *Granillo, supra,* 197 Cal.App.3d at p. 117.) This court then held it was unnecessary to rely on an implied finding since the trial court subsequently made an express finding. Thus, the statement was also only dictum. Furthermore, *People* v. *Turner* (1986) 42 Cal.3d 711 [230 Cal.Rptr. 656, 726 P.2d 102], upon which *Granillo* relied in making the above quoted statement, is distinguishable from this case. There, the prosecutor was specifically asked by the court "to explain." (*Turner, supra,* at p. 718.) That case is further distinguishable on the basis that the Supreme Court felt the "combination of . . . factors" in that case, not present here, clearly established a prima facie showing of group discrimination. (*Id.* at p. 719.)

This court recognized this potential problem in *People* v. *Granillo, supra,* 197 Cal.App.3d at page 122: "The prima facie showing requirement is a distinct step which should be treated as such. Twelve potential jurors have

been passed 'for cause' and peremptory challenges are being exercised. A 'Wheeler' objection is made that there is an objectively reasonable basis for believing the other side is improperly excusing jurors. The reasonableness of the belief is the limited issue at this point. The court must determine whether there is a prima facie indication of constitutional abuse. The focus is on the objecting party's contentions and the record. The burden is upon the objecting party; justifications by the other side are not yet appropriate. *If justifications are heard at this early stage in the process an undoubtedly unintended implication arises that a prima facie showing has been made to the satisfaction of the court.*" (Italics added.)

A reviewing court must look carefully at the circumstances faced by the trial court whenever it is asked to decide whether the trial court intended to make an implied finding that a prima facie case was established under *Wheeler*. It is clear that not every request for input from the prosecutor is intended by a trial court as a prima facie finding. The trial court may simply want input on the very question of whether a prima facie case has been established. For example, in this case the *Wheeler* motion raised the question of whether one of the challenged jurors (Wright) was a member of a cognizable class. It would have been imprudent, and maybe unfair, for the trial court to decide this question without providing the prosecutor an opportunity to state her observations or opinion. The trial court must be given some latitude to make inquiries to more preparedly deal with the situation before it. *Granillo* does not hold to the contrary.

In this case, unlike *People* v. *Turner, supra,* the prosecutor was not asked to explain her peremptory challenges. That she gave an unsolicited explanation is of no moment since defendant never made it past the prima facie stage. The trial court did not err in denying defendant's *Wheeler* motion.

## II*

*Did the Trial Court Err by Failing, Sua Sponte, to Instruct Upon Voluntary Intoxication (CALJIC No. 4.21)?*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

* See footnote, *ante,* page 248.

## III

### *Did the Trial Court Err by Refusing to Instruct Pursuant to the Relevant Portions of CALJIC No. 3.34 Regarding How Intent Is Shown?*

■ Defendant's final contention is that the trial court prejudicially erred by refusing to instruct pursuant to CALJIC No. 3.34 concerning how intent is shown. This instruction was not requested by defendant but by the prosecutor.

CALJIC No. 3.34 provides: "The intent with which an act is done is shown as follows: [¶] [By a statement of his intent made by a defendant.] [¶] By the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act. [¶] [For the purposes of the case on trial, you must assume that the defendant was of sound mind at the time of his alleged conduct which, it is charged, constituted the crime described in the information.]"

The most recent use note to CALJIC No. 3.34 (1979 rev.) states, "In view of the 1981 amendment of Penal Code, § 28 approval of CALJIC 3.34 (1979 Revision) is withdrawn. See CALJIC 8.11 (1983 Revision) and CALJIC 8.31 (1983 Revision)." Defendant has cited no authority for his contention that the court had a sua sponte duty to give the instruction or that its absence constituted reversible error. Moreover, the bracketed portion of the instruction is obviously objectionable from the defendant's standpoint to the extent that he argues on appeal that there was sufficient evidence of his intoxication to warrant a diminished capacity instruction. (See use note to CALJIC No. 3.34 (1979 rev.) which indicates it should not be given where there is evidence of diminished capacity.)

The trial court should not be required under these circumstances to fashion its own instruction, sua sponte, explaining to the jury how intent is shown, especially in light of all of the other instructions given, which appear to have sufficiently informed the jury on this subject.

"In each of the crimes charged in Counts I and II of the Information, namely burglary, there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator, and unless such specific intent exists, the crime to which it relates is not committed. The specific intent required is included in the definition of the crimes charged.

"*The specific intent with which an act is done may be shown by the circumstances surrounding the commission of the act.* But you may not find the

Defendant guilty of the offense charged in Counts I and II unless the proved circumstances not only are consistent with the theory that he had the required specific intent, but cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to such specific intent is susceptible of two reasonable interpretations, one of which points to the existence of the specific intent and the other to the absence of the specific intent, it is your duty to adopt that interpretation which points to the absence of the specific intent.

"If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable." (Italics added.)

In short, if the defendant believed further instructions were necessary on how intent is shown, he should have requested them. (*People* v. *Martinez* (1978) 82 Cal.App.3d 1, 19 [147 Cal.Rptr. 208].) Moreover, considering the instructions that were given, any error in failing to give the instruction was harmless since it is not reasonably probable that a result more favorable to the defendant would have occurred absent such error. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].) The jury acquitted defendant of count II, which charged defendant with burglary of the appurtenant woodshed. The only issue on this count was whether defendant entered with the specific intent to steal or was merely passing through on his way out of the residence after being confronted by the victim. Under the instructions, the jury was able to determine that defendant did not have the required specific intent. Thus, we conclude that the error, if any, was harmless.

DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Ardaiz, J., concurred.

A petition for a rehearing was denied February 14, 1989, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 19, 1989. Mosk, J., was of the opinion that the petition should be granted.