[No. B070286. Second Dist., Div. One. Dec. 20, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT FERRO, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V.

## COUNSEL

Hector C. Perez for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George H. Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, David F. Glassman and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—We affirm defendant's conviction of a violation of Penal Code section 12303.2, prohibiting possession of "any explosive on a public street or highway, in or near any theater, hall, school, college, church, hotel, other public building, or private habitation, in, on, or near any aircraft, railway passenger train, car, cable road or cable car, vessel engaged in carrying passengers for hire, or other public place ordinarily passed by human beings . . . ."

### BACKGROUND

Jamie Wolden was found in possession of a small amount of explosive known as C-4, arrested, and taken to the Baldwin Park Police station. Sheriff's deputies responded and, after further investigation, secured search warrants for defendant Robert Ferro's home and an abandoned chicken processing plant owned by him. Deputies found five pounds of C-4 in a cabinet in an office in the chicken plant. At the same time, other deputies served the search warrant at defendant's home, where he was detained during the search. After being notified that C-4 was found at the chicken plant, deputies at the home arrested defendant.

The defense attempted to pin possession of the chicken plant C-4 on Wolden. Defendant denied it was his.

Charged with three separate counts involving possession of prohibited materials, defendant secured pretrial dismissal of one count and successfully moved to suppress the results of the search of a pickup truck in which prohibited materials were found. The jury acquitted him of another count and convicted him of a single count of possession of an explosive under Penal Code section 12303.2.

On appeal, defendant presents several claims, including error during jury selection, improper exclusion of defense evidence, insufficiency of evidence, and ineffective assistance of counsel.

### DISCUSSION

### I

During jury selection, defense counsel raised the point of systematic exclusion and concluded his remarks thus: ". . . it would appear as though at least the court could inquire as to [the prosecutor's] motivation, perhaps

her reasons, at least. The threshold requirement I feel has been made for a *Wheeler* type of objection. So we would log it and ask for a mistrial." (Italics added.) The trial court asked the prosecutor, "Do you wish to be heard, counsel?" She replied, "Just briefly, your honor. [¶] I don't believe, first of all, that counsel has made a suspect class. He has two women of—two Hispanic women, one old, one young, one Black woman who appears to be middle aged and one man who is White. I don't see a group there by any stretch of the imagination that can be called a suspect group. It is not one particular minority, it is not one particular sex. It is nothing. It is not one particular age. I don't think age or sex is a suspect class, anyway. I think the only suspect class is minority grouping and I think we have two Hispanics, one Black and one White." The trial court replied, "I think there is a recent case that has come down involving gender, but I concur with the People at this point. There doesn't appear to be a pattern of a systematic exclusion."

■ The question is whether the above means the trial court made a prima facie finding of systematic exclusion. If it did, the conviction must be reversed. ■ "Once a prima facie case has been shown, the burden shifts to the prosecutor to show that the jurors in question were legitimately excused. [Citations.]" (*People* v. *Gonzalez* (1989) 211 Cal.App.3d 1186, 1192 [259 Cal.Rptr. 870].) Here, the prosecutor offered no justification for the peremptory challenges, but addressed only the question of whether a prima facie showing had been made.

"In the absence of an express prima facie finding, reviewing courts have implied this initial finding through the actions of the trial court." (*People* v. *Gonzalez, supra*, 211 Cal.App.3d at p. 1196.)

■ In *Gonzalez*, the trial court's response to the *Wheeler* motion (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) was, " '*All right. I'll ask the District attorney to give me reasons for the exclusion of those two prospective jurors, Miss M*[ ]?[' ]" (*People* v. *Gonzalez, supra*, 211 Cal.App.3d at p. 1195.) The prosecutor replied with a somewhat detailed, but insufficient, justification of her exercise of peremptory challenges. The appellate court found the trial "court's request for reasons of exclusion presupposed an implied finding that the prima facie evidence existed. Otherwise, there was no reason to request explanations. The prosecution should not be obligated to justify peremptory challenges unless the court has found that prima facie evidence of improper exclusion exists. By asking the prosecutor to give reasons for her challenges, the court impliedly made the requisite prima facie finding of systematic exclusion, thus shifting the burden to the prosecutor to justify the challenges." (*Id.* at p. 1198.)

In *People* v. *Turner* (1986) 42 Cal.3d 711 [230 Cal.Rptr. 656, 726 P.2d 102], the trial court responded to the defense *Wheeler* motion by asking the

prosecutor, " 'Mr. Martin, would you like to explain?' [The prosecutor offered reasons.] . . . [¶] . . . It follows that unless the trial court . . . had made at least an implied finding of group discrimination, it would have had no basis for asking the prosecutor to 'explain' the reasons for his peremptory challenges. . . . Indeed, after *Wheeler* it is disingenuous to treat such inquiries as anything else." (*Id.* at pp. 718-719; see also *People* v. *Trevino* (1985) 39 Cal.3d 667 [217 Cal.Rptr. 652, 704 P.2d 719], and *People* v. *Hall* (1983) 35 Cal.3d 161 [197 Cal.Rptr. 71, 672 P.2d 854].)

"In *People* v. *Granillo* [(1987)] 197 Cal.App.3d 110 [242 Cal.Rptr. 639], the trial court 'invited the prosecutor to respond' to the defense's *Wheeler* motion. (*Id.* at p. 117.) [The prosecutor attempted to justify the peremptory challenges.] 'This invitation arguably constituted an implied finding of a prima facie showing.' (*Ibid.*) *Granillo* held that if the justifications 'are heard at this early stage in the process an undoubtedly unintended implication arises that a prima facie showing has been made to the satisfaction of the court.' (*Id.* at p. 122.) *Granillo* also explained that such an implication was unnecessary since the court later made an express prima facie finding." (*People* v. *Gonzalez, supra,* 211 Cal.App.3d at p. 1197.)

In *People* v. *Cervantes* (1991) 233 Cal.App.3d 323 [284 Cal.Rptr. 410], a spousal abuse case, the defense accused the prosecution of systematically excluding White men from the jury. The trial court asked the prosecutor to respond and he argued that White men were not a cognizable group. After further colloquy, the prosecutor denied he was systematically excluding anyone. The court invited him to state his reasons for dismissing the individual jurors involved. The prosecutor objected, but said he would if so ordered. The trial court replied, " 'Well, I think—I am not granting his motion, but I think for the record it would be beneficial to have that on there.[']" (*Id.* at p. 328.) The prosecutor then "fell into the common trap of responding with specific reasons for exercise of his peremptories in response to the trial court's request that he do so *without the court making a finding that a prima facie showing of discrimination has been established.*" (*Id.* at p. 335.)

Under the circumstances, the *Cervantes* appellate court concluded the trial court had impliedly made the prima facie finding and the prosecutor had failed to adequately explain. The problem "could have been avoided had the district attorney demanded a specific finding of the trial judge. Although not an excuse, we understand that trial lawyers, including deputy district attorneys, often are reluctant to make demands of the trial judge for such things as specific findings, etc. However, at least as to *Wheeler* motions, the district attorney need never be put in this position. When defense counsel makes a

*Wheeler* motion and states his reasons for the motion, if the trial judge, after weighing and evaluating these reasons, concludes a prima facie showing of discriminatory exclusion of a cognizable group has not been made, then the judge must clearly and succinctly say so, state his or her reasons, and make the necessary finding of no prima facie showing. On the other hand, if the court concludes a prima facie showing has been made, then it must state that finding. Either way, the district attorney knows where he or she stands and what must be done, i.e., either respond or not, depending on the court's specific finding. And, of course, had the above-described scenario been followed here, then *Wheeler* error may have been avoided." (*People* v. *Cervantes, supra,* 233 Cal.App.3d at pp. 336-337, fn. omitted.)

In *People* v. *McCaskey* (1989) 207 Cal.App.3d 248 [254 Cal.Rptr. 742], the trial court's invitation to the prosecutor was simply, " 'Ms. Begen?[']" (*Id.* at p. 255.) She delivered a detailed explanation as to each juror. The trial court's ensuing comments agreed with the prosecutor and concluded with, " '*I don't find that there has been a systematic exclusion of Mexican-Americans from this jury.* And the motion under *Wheeler* is denied.' " (*Id.* at p. 256.) Rejecting the claim that the trial court made an implied prima facie finding, the appellate court concluded the "court did not call upon the prosecutor to explain, but simply provided her an opportunity to respond to defendant's motion." (*Id.* at p. 254.) "By finding no systematic exclusion, it appears clear that the court not only did *not* impliedly find a prima facie case had been made, but to the contrary, it *expressly* found that *no* prima facie showing had been made. [Citation.] The fact that the prosecutor tried to justify her challenges even though the court did not call upon her to do so did not preclude the court's finding that there was in fact no prima facie showing in the first instance." (*Id.* at p. 256.)

Defendant says *McCaskey* is inconsistent in one aspect with *People* v. *Granillo* (1987) 197 Cal.App.3d 110 [242 Cal.Rptr. 639], which, according to defendant, implies that a trial court's subsequent statements cannot be used to determine that the trial court's initial invitation to the prosecutor did not constitute a prima facie finding. "Once the court rules a prima facie showing has been made, the 'peremptory' attribute of the challenges is lost and the focus turns to justifying the excuses on some acceptable specific basis. No longer is the court 'screening' out frivolous objections. Although the court may have second thoughts concerning whether a prima facie showing has been made, it may not return to the screening process. The sole issue then pending is the adequacy of the justifications." (*Id.* at p. 122.)

But in *Granillo*, the trial court's invitation to the prosecutor to respond was later confirmed as a prima facie finding when the trial court specifically

found systematic exclusion. We have no quarrel with the proposition that second thoughts under the circumstances would have improperly put the court back into a screening mode. We do not read *Granillo* as holding that subsequent events cannot shed light on whether a vague initial invitation by the trial court to the prosecutor was intended as a prima facie finding or was merely a seeking of input as to whether a prima facie showing has been made by the defense.

In *People* v. *Johnson* (1989) 47 Cal.3d 1194, 1217 [255 Cal.Rptr. 659, 767 P.2d 1047], the trial court reacted to the *Wheeler* motion by asking the prosecutor, " 'Do you wish to respond . . . ?' It then proceeded to hear the prosecutor's explanations for the use of the peremptory challenges. In *People* v. *Turner*[, *supra*,] 42 Cal.3d 711 at pages 718-719 . . . we concluded that such an inquiry by the trial court constituted 'at least an implied finding' of a prima facie showing." *Johnson* did not consider the question of whether the totality of circumstances can show lack of a prima facie finding when the trial court has invited the prosecutor to "respond" or "be heard" as opposed to "explain" or "give reasons."

*McCaskey* held that a "reviewing court must look carefully at the circumstances faced by the trial court whenever it is asked to decide whether the trial court intended to make an implied finding that a prima facie case was established under *Wheeler*. It is clear that not every request for input from the prosecutor is intended by a trial court as a prima facie finding. The trial court may simply want input on the very question of whether a prima facie case has been established. For example, in this case the *Wheeler* motion raised the question of whether one of the challenged jurors . . . was a member of a cognizable class. It would have been imprudent, and maybe unfair, for the trial court to decide this question without providing the prosecutor an opportunity to state her observations or opinion. The trial court must be given some latitude to make inquiries to more preparedly deal with the situation before it. *Granillo* does not hold to the contrary." (*People* v. *McCaskey*, *supra*, 207 Cal.App.3d at p. 257.)

*Johnson* was filed by the Supreme Court on February 23, 1989. The Supreme Court denied review in *McCaskey* on April 19, 1989.

The instant matter goes *McCaskey* one better. The trial court did not ask for reasons or explanations. It merely asked the prosecutor if she wished to be heard. The prosecutor, wisely or fortuitously, gave not one word of excuse or explanation, but attacked the preliminary question of systematic exclusion, after which the trial court specifically found no pattern of systematic exclusion. In the cases surveyed above, including *McCaskey*, the prosecutors, some eagerly, some reluctantly, gave reasons for excluding the jurors

in question. It is easier to conclude that a trial court has impliedly made the prima facie finding when it takes the next step and listens to the justifications offered.

In *People* v. *Bittaker* (1989) 48 Cal.3d 1046 [259 Cal.Rptr. 630, 774 P.2d 659], after the defense accused the prosecutor of violating *Wheeler*, the trial "court afforded the prosecutor a chance to respond—the prosecutor denied the charge—and then denied defendant's motion. [¶] Defendant argue[d] that by offering the prosecutor a chance to respond to the motion, the court in effect found that defense counsel had made a prima facie showing of group bias, thus shifting to the prosecutor the burden to justify his challenges. We do not so interpret the judge's ruling. He did not call upon the prosecutor to explain his challenges, but to respond to the defense motion. When the judge then denied the motion, he did so on the ground that the defense had not made out a prima facie showing of group bias, not that the prosecutor had rebutted such a showing." (*Id.* at pp. 1091-1092.)

"In determining whether to infer a trial court's finding of a prima facie case under *Wheeler*, we look to the whole record, examining the court's remarks in context." (*People* v. *Hayes* (1990) 52 Cal.3d 577, 605, fn. 2 [276 Cal.Rptr. 874, 802 P.2d 376].)

We are persuaded by *McCaskey*, fortified by *Bittaker* and *Hayes*. In context, the trial court merely gave the prosecutor the chance to be heard. She attacked only the prima facie question and the trial court then found no systematic exclusion. The only conclusion we can draw is that the trial court did not impliedly make a prima facie finding.

Some of the cases summarized above turn on exceedingly fine points of the peculiar phrasing of the trial court's invitation and the nature of the prosecutor's response. The sad lesson is that when the trial court responds with "do you want to be heard" or "would you like to respond," the ball is in the air and can land anywhere. Here, it happens to have landed on the prosecution's side. Next time it may just as well require an automatic reversal. Such unpredictability is anything but desirable, but when vague records come to us, leaving us to in effect try to read the trial judge's mind, an unintended twist of phrase can end up the deciding factor. Strange though it seems, the case law requires us to pick at microscopic distinctions and make a call that may or may not resemble what the trial judge had in mind. It's much easier for the trial court to just say whether it is making the prima facie finding before it asks the prosecutor to respond, or if limiting the inquiry to whether a prima facie showing has been made, to say so. Any prosecutor who fails to inquire and gushes explanations when the trial court has failed to specify is unwittingly jeopardizing his or her case.

## II-V*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Masterson, J., concurred.

A petition for a rehearing was denied January 19, 1994, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 23, 1994. Mosk, J., was of the opinion that the petition should be granted.

*See footnote, *ante*, page 1.