Filed 1/29/14  P. v. Alvarez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT JESSIE ALVAREZ,<br><br>        Defendant and Appellant. | F065065<br><br>(Super. Ct. No. BF130049A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

A.M. Weisman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Robert Jessie Alvarez of first degree murder with special circumstances and attempted robbery. It also found true that Alvarez personally used a knife in the commission of the offenses. The trial court found that Alvarez had served three prison terms. Alvarez was sentenced to life in prison without parole on the murder conviction and terms were imposed for the enhancements; the term for the attempted robbery conviction was stayed.

Alvarez contends there were numerous errors that warrant reversal of his convictions: (1) error pursuant to *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) in jury selection, (2) ineffective assistance of counsel, (3) prosecutorial misconduct, and (4) the felony-murder special circumstance is unconstitutional. Additionally, he challenges his sentence on the grounds a life-without-parole sentence is not subject to enhancement and asserts clerical error in fixing presentence conduct credit.

We will direct that the clerical error be corrected. We reject Alvarez's other challenges to his convictions and sentence and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On November 1, 2009, Francisco Aguilar was at his mother's house; his girlfriend, Sabrina Santa Cruz,[1] also was there. Sometime later, Alvarez arrived. Aguilar and Alvarez were drinking. Eventually, they left the house to go to a bar. After leaving the bar, they headed to a liquor store to purchase more alcohol and then to a 7-Eleven store for cigarettes.

Aguilar and Alvarez ran into the victim, Jerry Ennis, at the 7-Eleven. Ennis was wearing a thick necklace, a bracelet, a lot of rings, and was driving a Cadillac. Ennis

---

[1]In the record, the spelling of "Santa Cruz" appears several different ways. We will use "Cruz" as Sabrina's last name and refer to her by that name.

then drove Alvarez and Aguilar to Aguilar's mother's house and Aguilar invited him in; Ennis accepted.

According to Aguilar, Ennis later drove Alvarez, Aguilar, and Cruz to a location where they could purchase methamphetamine. As soon as Cruz left the car, Alvarez grabbed Ennis by the hair and pulled his head back. Alvarez ordered Ennis to take off his jewelry; Ennis tried to resist by honking the horn and pulling away from Alvarez. Alvarez "sliced" and "stabbed" Ennis "a couple times in the face." Blood "went all over the place" and Aguilar and Alvarez got out of the car and walked away. Alvarez used his cell phone to make a couple of phone calls and then discarded his sweatshirt and the knife he used on Ennis.

Lonnie Robinson was awakened by a horn honking. He looked outside and saw a Cadillac with three people in it. All three exited the Cadillac; a male went to another house, knocked, and yelled, "Help, help."

Michelle Guy was awakened by a knock at her door; Ennis was on the doorstep, bleeding and asking for help. Guy called 911.

Bakersfield Police Officers Malley and McCauley were dispatched in response to the 911 call. They found Ennis lying on the ground; a trail of blood ran from the Cadillac to Ennis. Police Sergeant Heredia was dispatched to a "homicide scene." He found the sweatshirt that Alvarez had discarded.

Detective Dossey also was dispatched to the scene. He examined the Cadillac and opined that the victim was seated in the front driver's seat and had been stabbed or cut from behind. Dossey also examined Ennis's body at the hospital and observed that the neck wound became progressively deeper "from the left moving to the right." Dossey subsequently obtained a video from the store cameras at the 7-Eleven store. The video showed Alvarez, Aguilar, and Ennis leaving the store together in Ennis's Cadillac.

After leaving Ennis, Alvarez walked to his friend Steven Benton's house. Benton asked Alvarez what kind of trouble he was in. Alvarez made a hand gesture, which

3.

Benton interpreted to mean someone had been stabbed. Alvarez told Benton he tried to take a necklace from a guy he met at a store, and the guy "wouldn't give up what he was trying to take." Alvarez stated he "slit" the man's throat and stabbed the man. Benton's girlfriend, Theresa Long, overheard Alvarez say "he just did somebody."

Eventually, Aguilar was arrested. He had prior convictions, including one for second degree burglary. Subsequent to his arrest, he was "given an offer to resolve" the charges against him by pleading guilty to specified offenses with an indicated sentence in exchange for agreeing to testify truthfully against Alvarez.

Alvarez was charged with murder, a violation of Penal Code section 187, subdivision (a),[2] and attempted robbery, a violation of sections 212.5, subdivision (c) and 664. It also was alleged as a special circumstance that the murder was committed during the attempted commission of a robbery. It further was alleged that Alvarez personally used a knife and had served three separate prison terms.

During the trial, Kaci Keeney, a criminalist with the Kern County Regional Crime Lab, testified to her examination of various items for DNA evidence. Ennis's blood was found on the sweatshirt discarded by Alvarez and recovered by Heredia. Testimony also was presented that several phone calls had been made from Alvarez's cell phone around the time Ennis was stabbed, near where the stabbing had occurred.

The jury found Alvarez guilty of murder in the first degree and attempted robbery and also found the special circumstance and personal use of a knife allegations to be true. In a bifurcated proceeding, the trial court found the prison term allegations to be true.

Alvarez was sentenced to life without the possibility of parole on the murder charge. The trial court also imposed a term of one year for the knife enhancement and three years for the prior prison terms; the terms imposed for the attempted robbery and enhancements appended thereto were stayed.

_____

[2]All further statutory references are to the Penal Code unless otherwise stated.

## DISCUSSION

Alvarez asserts (1) error in the jury selection, (2) ineffective assistance of counsel, (3) prosecutorial misconduct, (4) the felony-murder special circumstance is unconstitutional, (5) sentencing error, and (6) clerical error in the preparation of the abstract of judgment.

### I. Jury Selection

Each party was entitled to use 20 peremptory challenges during trial. (Code Civ. Proc., § 231, subd. (a).) Alvarez contends the prosecutor used nine peremptory challenges specifically to exclude prospective jurors solely on the basis that they were Hispanic. Those prospective jurors were Rosa Stone, Denice Nunez, Tara Vasquez, Eugene Tafoya, Ken Stewart, Elva Miranda, Maria Licea, Cindy Valverde, and Adriana Galvan. We conclude the prosecutor had race-neutral reasons for exercising peremptory challenges against these jurors.

#### *Factual Summary*

During voir dire and outside the presence of the jury, defense counsel timely objected under *Batson, supra,* 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) to the prosecutor's peremptory challenges of nine jurors, which defense counsel claimed constituted exclusion of a "cognizable class, Hispanics." Defense counsel argued that at the time the prosecutor exercised her 13th peremptory challenge, nine of the people challenged were Hispanic.

The trial court asked if defense counsel had any additional comments to make to support a prima facie case of discrimination, to which defense counsel responded "comparing some of them to some of the jurors that are still on the panel, I think that some of these are similar that have not been excused." Defense counsel had no other specific points to make regarding a prima facie showing.

The trial court asked the prosecutor to address whether the defense had established a prima facie case. The prosecutor opined that Stone and Valverde, who had blue eyes,

5.

did not appear to be Hispanic; thus, only seven of the 13 peremptory challenges had been exercised against Hispanics. The prosecutor opined that since about half the population in the county was Hispanic, there had been no prima facie showing of categorical exclusion.

Defense counsel countered that both Stone and Valverde appeared to be Hispanic. The trial court agreed with the prosecutor that Stone appeared to be Caucasian, agreed with the defense that Valverde appeared Hispanic, and opined that Stewart appeared to be Caucasian and not Hispanic. Accordingly, the trial court agreed with the prosecutor that seven of 13 peremptory challenges had been used to remove Hispanics. The trial court also agreed with defense counsel that Hispanics were a cognizable group, but opined that "the defense has failed to establish an inference that those particular jurors were challenged because of their group association."

Although finding no prima facie case had been established, the trial court invited the prosecutor to "make a record concerning the reasons for exercising peremptory challenges." The prosecutor then articulated reasons for exercising peremptory challenges.

As to Stone, the prosecutor stated that "she answered particularly on issues regarding accomplice liability in a [manner] in which we did not feel that she would be an appropriate juror."

Nunez was unemployed and the prosecutor "did not believe that she would be able to participate in this deliberation."

Valverde had "a rather negative attitude and did respond very negatively to the court reporter whenever she was asked to speak up," and the prosecutor did not think she would participate with other jurors.

Galvan "had a very quiet demeanor." The prosecutor was concerned about her ability to participate in deliberations with other jurors.

6.

Licea answered during voir dire that she thought she recognized Alvarez and that her niece was murdered 10 years ago and no one was prosecuted. The prosecutor stated that she did not think Licea would be a good juror in Alvarez's case.

Miranda's brother was a public defender and Miranda was a physician. The prosecutor was concerned about both these facts because of the anticipated DNA testimony.

Tafoya had answered during voir dire that he had been on a jury in a prior case; the defendant committed suicide after being convicted; and Tafoya felt responsible. The prosecutor opined that Tafoya would not be a good juror for the case.

As for Vasquez, the prosecutor was concerned about the manner in which she answered questions about accomplice testimony.

Stewart knew a person named Lonnie Robinson and there was concern that he was the same Lonnie Robinson who was a potential witness in the case.

*Analysis*

Both the state and federal Constitutions prohibit the use of peremptory challenges to remove prospective jurors based solely on group bias. (*Batson, supra*, 476 U.S. at p. 89; *Wheeler, supra*, 22 Cal.3d at pp. 276-277.) "'"[T]he United States Supreme Court [has] reaffirmed that *Batson* states the procedure and standard to be employed by trial courts when challenges such as defendant's are made. 'First, the defendant must make out a prima facie case by "showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citations.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide … whether the opponent of the strike has proved purposeful racial discrimination." [Citation.]' [Citation.]" (*People v. Cornwell* (2005) 37 Cal.4th 50, 66-67.) The defendant must "show that it is more likely than not the other party's peremptory

challenges, if unexplained, were based on impermissible group bias." (*People v. Johnson* (2003) 30 Cal.4th 1302, 1318.)

In determining whether the defendant ultimately has carried his burden of proving purposeful racial discrimination, "the trial court 'must make "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily .…" [Citation.]' [Citation.]" (*People v. Reynoso* (2003) 31 Cal.4th 903, 919.) "[T]he trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine." (*Ibid.*) Inquiry by the trial court is not even required. (*Id.* at p. 920.) "All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory." (*Id.* at p. 924.) A reason that makes no sense is nonetheless "sincere and legitimate," as long as it does not deny equal protection. (*Ibid.*)

"When a trial court denies a *Wheeler* motion without finding a prima facie case of group bias, the appellate court reviews the record of voir dire for evidence to support the trial court's ruling. [Citations.] We will affirm the ruling where the record suggests grounds upon which the prosecutor might reasonably have challenged the jurors in question. [Citation.]" (*People v. Farnam* (2002) 28 Cal.4th 107, 135.)

Here, race-neutral reasons for excusing the jurors are apparent from the record and were articulated by the prosecutor. That the prosecutor used about half of her peremptory challenges to excuse Hispanics from the jury does not by itself establish a prima facie case. (See *People v. Box* (2000) 23 Cal.4th 1153, 1188-1189.)

Regarding Stone, the trial court agreed that she did not appear to be Hispanic. In any event, Stone responded in voir dire that when a witness had been promised

8.

something in return for testimony, then that witness's testimony "wasn't worth anything" and would have "zero credibility." These statements reasonably could cause the prosecutor to believe that Stone "would [not] be an appropriate juror in this particular case."

The prosecutor stated she excused Nunez, in part, because Nunez was unemployed. Although Alvarez may disagree that this should be used as a basis for exclusion from a jury, case law supports that it is a proper race-neutral reason for exercising a peremptory challenge. (See *People v. Hamilton* (2009) 45 Cal.4th 863, 905.) In addition, Nunez also was acting as a caretaker for her stepfather, who would undergo surgery at the time of trial and trial was expected to last three weeks.

As for Valverde, the trial court agreed with the prosecutor's impression that she "did not appear to want to be present here" and appeared "to have a negative attitude during the entire jury selection process." The demeanor of a prospective juror may justify removal of that juror. (*People v. Davenport* (1995) 11 Cal.4th 1171, 1203 (*Davenport*).) Valverde's employment as a social worker also constitutes a race-neutral reason for excusing her with a peremptory challenge. (See *People v. Howard* (1992) 1 Cal.4th 1132, 1155-1156.)

Regarding Galvan, Alvarez contends on appeal that nothing in the record supports the prosecutor's claim that Galvan was "too quiet." However, neither Alvarez nor the trial court disagreed with the prosecutor's assessment of Galvan at the time it was offered as a race-neutral reason for exercising a peremptory challenge. Again, a juror's demeanor may suffice as a race-neutral reason. (*Davenport, supra,* 11 Cal.4th at p. 1203.)

Licea's answers in voir dire presented multiple race-neutral reasons for excusing her: (1) the unsolved murder of her niece; (2) her nephew had been convicted of "[c]ooking meth"; (3) she may have recognized Alvarez; and (4) she indicated she would have trouble believing any witness who had been "provided a deal." Even if these points

9.

were insufficient to challenge a prospective juror for cause, they nonetheless constitute race-neutral reasons for a peremptory challenge. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1123-1124; *People v. Ochoa* (2001) 26 Cal.4th 398, 432-433; *People v. Turner* (1994) 8 Cal.4th 137, 171 (*Turner*).)

As for Miranda, the prosecutor excused her because she was a physician; her status as a physician would give her special knowledge about matters that were the subject of expert testimony; and her brother was a public defender. Alvarez contends Miranda should not have been excused because she also had brothers who were correctional officers and had stated she could be fair to both sides. Regardless, the prosecutor's stated reasons were legitimate and race neutral.

The prosecutor stated she excused Tafoya because he previously had served on a jury where the defendant committed suicide and Tafoya felt responsible. Alvarez contends Tafoya never said he felt responsible; rather, Tafoya indicated his experience in that case possibly would affect his ability to serve in Alvarez's case. Regardless of the exact language used by Tafoya, the prosecutor was entitled to question Tafoya's ability to serve as a juror after his previous experience and to exercise a peremptory challenge. In addition to the reason cited by the prosecutor, the record discloses that Tafoya had a relative who had been convicted of domestic violence, had a student who recently had passed away and the death was still affecting him, and had friends and/or relatives who may have been victims of unsolved crimes in the county.

As for Vasquez, the prosecutor cited her responses to accomplice questions as a reason for exercising a peremptory challenge. Alvarez correctly observes that the record does not support this ground, as it does not appear Vasquez answered any of the accomplice questions in an objectionable manner. The record discloses, however, that the prosecutor had accepted the jury during the first round of peremptory challenges while Vasquez was still on the jury, did not remove Vasquez during the second round of peremptory challenges, and exercised her 11th peremptory challenge to remove Vasquez

10.

in the third round. This does much to refute the suggestion of a racially discriminatory purpose. (*Turner, supra,* 8 Cal.4th at p. 168.) Regardless, the record shows that Vasquez had a brother who had been convicted of a felony in Kern County about a year prior to voir dire, which would constitute a race-neutral reason for exercising a peremptory challenge.

Alvarez's contention at trial that other jurors were seated who he claimed had similar answers and backgrounds is of no consequence. "Trial lawyers recognize that it is a combination of factors rather than any single one which often leads to the exercise of a peremptory challenge. In addition, the particular combination or mix of jurors which a lawyer seeks may, and often does, change as certain jurors are removed or seated in the jury box." (*People v. Johnson* (1989) 47 Cal.3d 1194, 1220 (*Johnson*).) It is apparent "that the very dynamics of the jury selection process make it difficult, if not impossible, on a cold record, to evaluate or compare the peremptory challenge of one juror with the retention of another juror which on paper appears to be substantially similar. [Attempting] to make such an analysis of the prosecutor's use of his peremptory challenges is highly speculative and less reliable than the determination made by the trial judge who witnessed the process by which the defendant's jury was selected. It is therefore with good reason that [the California Supreme Court] and the United States Supreme Court give great deference to the trial court's determination that the use of peremptory challenges was not for an improper or class bias purpose." (*Id*. at p. 1221.)

Finally, as to Stewart, both the prosecutor and the trial court opined that Stewart appeared to be Caucasian and not Hispanic. In any event, Stewart may have known a witness in the case, had been the victim of an unsolved crime, and was unemployed. Any of these facts support a race-neutral reason for exercising a peremptory challenge.

Here, the record discloses valid race-neutral reasons for exercising a peremptory challenge against each of the jurors, and the trial judge, who witnessed the process, found no prima facie case of impermissible bias and valid reasons for the prosecutor to exercise

11.

her peremptory challenges as she did.  Alvarez has failed to establish a prima facie case of impermissible bias as a matter of law.  (*People v. McCaskey* (1989) 207 Cal.App.3d 248, 253.)  Accordingly, we conclude Alvarez has failed to demonstrate *Batson* error.  (*Johnson, supra,* 47 Cal.3d at p. 1221.)

## II.    Ineffective Assistance of Counsel

Alvarez asserts his defense counsel rendered ineffective assistance by failing to remedy (1) Dossey's testimony regarding the 7-Eleven store videos, and (2) Dossey's comments about Alvarez's statements to law enforcement.  We disagree.

### *Factual Summary*

The parties stipulated that three videos taken by different cameras at the 7-Eleven store accurately depicted events at the store on November 2, 2009, between 12:19 a.m. and 12:26 a.m.  During the direct examination of Dossey, the prosecutor showed portions of the videos.  Dossey commented that the videos showed Alvarez's attention directed toward Ennis, Alvarez in conversation with Ennis, and Alvarez and Ennis getting into a vehicle and leaving the area.

Defense counsel did not object to any of these comments and Alvarez contends it was improper lay opinion, which defense counsel should have objected to or otherwise remedied.

The second instance of alleged ineffective assistance involves Alvarez's pretrial statements to authorities.  Defense counsel filed a motion to suppress the statements, asserting they were involuntary and obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436.  During the hearing on the motion, defense counsel stated it was his understanding the prosecution did not intend to use the statements and withdrew the motion.  Both parties stipulated that the statements were not coerced.

When Dossey testified as part of the prosecution's case-in-chief, the prosecution asked Dossey about a substance he observed on Alvarez's sleeve after Alvarez's arrest.  Dossey responded that he questioned Alvarez about the substance and Alvarez answered

12.

he "didn't know what it was." Defense counsel objected and asked to approach the bench; the prosecutor, however, informed the trial court she would not "elicit a statement," and the trial court instructed the prosecutor to continue her examination.

Alvarez now contends defense counsel rendered ineffective assistance, even though he objected, because defense counsel should have moved for a mistrial, an order striking the testimony, and/or an admonition to the jury to disregard the testimony.

*Analysis*

The familiar standard for review of claims of ineffective assistance of counsel is that the defendant must show (1) trial counsel failed to act in a manner to be expected of reasonably competent attorneys, and (2) a more favorable result would have been obtained absent counsel's failings. (*People v. Lewis* (1990) 50 Cal.3d 262, 288 (*Lewis*).) We need not determine, however, whether counsel's decision was professionally unreasonable. We can resolve the ineffective assistance claim by proceeding directly to the issue of prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 697.) When the defendant cannot establish a reasonable probability that a more favorable result would have been obtained absent counsel's failings, a claim of ineffective assistance of counsel fails. (*People v. Welch* (1999) 20 Cal.4th 701, 751 (*Welch*).)

Concerning defense counsel's failure to object to Dossey's comments about the videos, failure to object rarely constitutes constitutionally ineffective legal representation. (*People v. Boyette* (2002) 29 Cal.4th 381, 424.) The decision whether to object is inherently tactical, and the failure to object rarely will establish ineffective assistance. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Defense counsel apparently made a tactical decision not to object to the remarks at the time of the testimony because he thoroughly addressed Dossey's comments and testimony in closing argument.

Moreover, the jury was instructed properly on how to evaluate testimony, including expert testimony and the opinions offered by lay witnesses. We assume jurors are intelligent people capable of understanding and correlating the instructions.

13.

(*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.)  Absent evidence to the contrary, and here there is none, we presume the jury understood and correctly applied the instructions. (*People v. Talhelm* (2000) 85 Cal.App.4th 400, 409 (*Talhelm*).)

Regarding the comment from Dossey about the substance on Alvarez's sleeve, defense counsel did object to this remark.  We disagree with Alvarez's claim that the remark, professing not to know the nature of the substance on his sleeve, would have been construed by the jury as evidence of consciousness of guilt.  The jury was not instructed with CALCRIM No. 362, consciousness of guilt.  The jury was instructed to view with caution any statement made by Alvarez tending to show his guilt, unless it was written or otherwise recorded.  Again, we presume the jury followed the instructions. (*Talhelm, supra,* 85 Cal.App.4th at p. 409.)

Also, defense counsel reasonably could have decided that Dossey's remark about the substance was not inconsistent with innocence or sufficiently harmful to warrant a motion for mistrial or any other motion calling attention to the remark.  Alvarez must show that the omission was not the result of a reasonable tactical decision; this he has not done.  (*People v. Gurule* (2002) 28 Cal.4th 557, 611.)  We do not second-guess counsel's tactical decisions on appeal.  (See *People v. Knight* (1987) 194 Cal.App.3d 337, 346.)

Furthermore, Alvarez has failed to demonstrate that absent Dossey's comments about the videos and the remark about the substance on Alvarez's clothing, the outcome of the trial would have been more favorable.  The evidence of Alvarez's guilt was overwhelming.  Aguilar provided eyewitness testimony that Alvarez killed Ennis; Benton testified that Alvarez admitted the next morning killing a man; Long testified that shortly after the killing, she overheard Alvarez admit that he "just did somebody"; the record of Alvarez's cell phone calls demonstrated that he placed calls from the vicinity of the killing shortly after Ennis was murdered; and the DNA evidence established that Ennis's blood was on Alvarez's clothing.

14.

In light of this evidence, Alvarez has failed to establish that a result more favorable would have been obtained absent any alleged failings of defense counsel. (*Welch, supra,* 20 Cal.4th at p. 751.) Consequently, his claim of ineffective assistance of counsel fails. (*Lewis, supra,* 50 Cal.3d at p. 288.)

## III. Prosecutorial Misconduct

Alvarez contends the prosecutor committed prejudicial misconduct during closing argument by misstating the law regarding aider and abettor liability when she commented "the aider and the abettor and the perpetrator, the person who actually commits the crime -- both are equally guilty." Alvarez has forfeited this contention.

A claim of prosecutorial misconduct is preserved for appeal by a timely objection to the misconduct and a request that the jury be admonished to disregard the impropriety. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) Alvarez concedes no objection or request for admonishment was made in the trial court but contends the issue is reviewable on appeal because an admonishment would not have cured the harm.

Alvarez fails to explain how an admonishment would not cure any harm from a prosecutor's single comment that allegedly misstated the law. Merely asserting that the misconduct is "incurable" is insufficient. (*People v. Foster* (2010) 50 Cal.4th 1301, 1354 [California Supreme Court rejected defendant's assertion that he did not forfeit claim of prosecutorial misconduct by his failure to object and seek curative admonition where defendant did not explain why a curative admonition would not have cured any harm].)

Initially, we note that the comment objected to by Alvarez, that an aider and abettor is equally guilty as the perpetrator, is generally an accurate and correct statement of the law "in all but the most exceptional circumstances." (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165.) Additionally, there was no error, as in *People v. Nero* (2010) 181 Cal.App.4th 504, 519, where the jury expressed confusion to the trial court surrounding aider and abettor liability and the trial court failed to clarify the issue for the jury.

15.

Furthermore, a single instance of misconduct does not constitute a pattern of egregious behavior warranting reversal. (*People v. Frye* (1998) 18 Cal.4th 894, 978-979.) Moreover, "'"when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." [Citation.]' [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1263-1264.) We conclude it is not reasonably likely the jury applied the remark in an objectionable fashion because of the instructions given by the trial court.

First, the jury in Alvarez's case was instructed by the trial court that nothing the attorneys stated during argument was evidence. Second, the trial court informed the jury that the instructions contained the law, jurors must follow the law as contained in the instructions, and, if the jury believed the attorneys' comments on the law differed from the instructions, the jury must follow the instructions. Third, Alvarez has raised no claim that the instructions misstated the law. Absent evidence to the contrary, and here there is none, we presume the jury understood and correctly applied the instructions. (*Talhelm, supra,* 85 Cal.App.4th at p. 409.) Because the jury was instructed properly, and we presume they followed those instructions, there was no prejudice to Alvarez and thus no possible ineffective assistance of counsel.

Alvarez's claim of prosecutorial misconduct fails.

## IV.    Felony-Murder Special Circumstance

Alvarez argues the felony-murder special circumstance is unconstitutional because there is no "meaningful distinction between the felony-murder special circumstance and the felony-murder theory of first degree murder." Consequently, he contends the felony-murder special circumstance must be reversed.

The People argue Alvarez has forfeited this contention by failing to raise any objection to the special circumstance in the trial court. The general rule is that constitutional objections must be raised in the trial court in order to preserve them for

16.

appeal. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060.) In *People v. Middleton* (1997) 52 Cal.App.4th 19, 36-38, disapproved on other grounds in *People v. Gonzalez* (2003) 31 Cal.4th 745, 752-753, footnote 3, the appellate court held that a defendant cannot object to an enhancement for the first time on appeal.

The People also contend that Alvarez has no standing to raise this issue because he was sentenced to life without parole, not death. (*Houston v. Roe* (9th Cir. 1999) 177 F.3d 901, 906-907 [defendant lacked standing to raise issue because defendant was not sentenced to death].) The narrowing requirement upon which Alvarez bases his argument is applicable in the context of the death penalty, not a life sentence. (See *Harmelin v. Michigan* (1991) 501 U.S. 957, 995-996; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1023.)

Regardless, the California Supreme Court, as Alvarez acknowledges, repeatedly has rejected the challenge he raises in this appeal and instead has upheld the felony-murder special circumstance as providing a meaningful basis for narrowing death eligibility. (See, e.g., *People v. Abilez* (2007) 41 Cal.4th 472, 528; *People v. Catlin* (2001) 26 Cal.4th 81, 158; *People v. Millwee* (1998) 18 Cal.4th 96, 164; *People v. Marshall* (1990) 50 Cal.3d 907, 946; *People v. Coleman* (1989) 48 Cal.3d 112, 153; *People v. Anderson* (1987) 43 Cal.3d 1104, 1147.)

The decisions of the California Supreme Court are binding upon and must be followed by all the state courts of California. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction and it is not their function to attempt to overrule decisions of a higher court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In view of the California Supreme Court's holdings on the issue, we must reject Alvarez's constitutional challenge.

We likewise reject Alvarez's claim of ineffective assistance of counsel for failure to raise the constitutionality issue. "Representation does not become deficient for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

## V. Enhancements

Alvarez asserts that the imposition of additional consecutive terms for the enhancements, when the base term is life without parole, "is a superfluous and meaningless act" that "might erode the public respect and esteem that should be accorded to the Judicial Branch." Once again, Alvarez did not assert this argument in the trial court, but contends it is reviewable nonetheless. The People contend this argument is forfeited.

Alvarez's argument relies primarily on the concurring opinion of Justice Ming Chin in *People v. Cleveland* (2004) 32 Cal.4th 704. In that case, Justice Chin indicated the Legislature might want to consider providing "that if the trial court imposes a sentence of death or [life without parole] on any count, it need not impose any other sentence, including enhancements." (*Id.* at p. 770). The Legislature has not yet accepted the invitation to change the mandatory sentencing statutes.

As the People point out, the enhancements imposed by the trial court were mandatory. Both sections 667.5, subdivision (b) and 12022, subdivision (b)(1) mandate that the sentencing court "shall impose" the term specified for these enhancements.

Additionally, Alvarez's argument has been rejected by appellate courts. (See, e.g., *People v. Hardy* (1999) 73 Cal.App.4th 1429, 1433-1434; *People v. Garnica* (1994) 29 Cal.App.4th 1558, 1563-1564.) As the appellate court noted in *Garnica,* the defendant, in this case Alvarez, will not suffer any actual prejudice from the imposition of the enhancements. (*Garnica,* at p. 1564.)

The imposition of the terms for the enhancements was mandated by statute and other courts have concluded, as do we, that this mandate applies to sentences where the principal term is life without parole.

## VI. Presentence Credit Correction

Alvarez was awarded presentence credit; however, both the minute order and the abstract of judgment refer to an erroneous code section. The minute order and abstract of

judgment should be corrected to reflect the correct code section, section 2933.2, which is the code section cited by the trial court at the time of sentencing.

When the oral pronouncement of judgment varies from the minute order, the oral pronouncement controls because "Entering the judgment in the minutes being a clerical function [citation], a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) We will direct that the clerical error in the minute order and the abstract of judgment be corrected.

## DISPOSITION

The trial court is directed to correct the clerical error in the minute order and abstract of judgment to reflect that presentence credit was awarded pursuant to Penal Code section 2933.2 and to forward copies of said documents to the appropriate agencies. In all other respects, the judgment is affirmed.

_____
CORNELL, Acting P.J.

WE CONCUR:

_____
DETJEN, J.

_____
HOFF, J.*

---

\*      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19.